## Philadelphia, Appellant, *v.* Commonwealth.

*Constitutional law—Statutes—Local or special laws—Changing method of collecting debts—Action by city against Commonwealth —Expense of primary election—Act of June 22, 1917, P. L. 636.*

1. The Act of June 22, 1917, P. L. 636, authorizing the County of Philadelphia to bring suit against the Commonwealth, in the Common Pleas of Philadelphia County, to recover the expenses of primary elections, does not violate article III, section 7, of the Constitution, which provides that no law shall be passed "granting

powers or privileges in any case, where the granting of such powers and privileges shall have been provided for by general law, nor where the courts have jurisdiction to grant the same or give the relief asked for."

2. Nor does the act violate the portion of the same section which prohibits local or special laws "providing or changing methods for the collection of debts."

3. The relief given by the act is the grant of a right to the city to an adjustment of its account against the Commonwealth, by the local courts, without a prior audit by the state officials, "relief" which the courts had no general power to "grant" or "give."

4. The statute does not change the "methods for the collection of debts"; it simply dispenses with the necessity for a preliminary adjustment by state officials.

5. The fact that the suit may be brought in the local courts instead of in the Common Pleas of Dauphin County is immaterial, inasmuch as the court in which a case is tried is no part of the "method" of collecting the claim in suit.

6. The grant of authority to bring and prosecute a suit against the Commonwealth must not be confused with the creation of a liability.

7. The liability of the Commonwealth for the expenses of primary elections was fixed by the Acts of February 17, 1906, P. L. 36, and July 12, 1913, P. L. 719. The Act of 1917 does not create a liability, it merely authorizes the city to enforce against the Commonwealth a liability already existing in its favor.

8. Where a conflict exists between a specific constitutional provision, which is unquestionably applicable to a particular case, and certain general provisions, which, were it not for such conflict, might apply, the specific provision will prevail.

9. Even should it be viewed that the general provisions of section 7, article III, of the Constitution, are in conflict with section 11, article I, yet none of those provisions could be construed to deny the right to bring, and hence to prosecute, any suit against the Commonwealth which the legislature might authorize, where a previous liability existed.

Argued February 14, 1921. Appeal, No. 165, Jan. T., 1921, by plaintiff, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1917, No. 2343, for defendant on case tried by the court without jury, in suit of Phila. Co. v. Commonwealth of Pennsylvania. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SADLER, JJ. Reversed.

Assumpsit to recover expenses paid out for primary elections.  Before STAAKE, J.

The opinion of the Supreme Court states the facts.

The court, on a trial without a jury, entered judgment for defendant.  Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*Abraham M. Beitler,* for appellant.—The act did not change any method then in force for the collection of the debt due the county.  It did not repeal or in anywise affect the Act of 1811.  Under that act a creditor of the State can appeal from a "settlement" with which he is dissatisfied, but that right the county never had.  There never had been a settlement of any of its bills.

The act did not grant a power or privilege, the granting of which had been provided for by general law.  The power or privilege the act granted was a right to sue the Commonwealth and there was not then in force any general law giving the county the right to sue the State.

Nor was the act one granting powers or privileges where the courts have jurisdiction to grant the same or give the relief prayed for.  No court has or had jurisdiction to grant to the county the right to sue the State and the right given by the act and the relief afforded by the act was merely to resort to a court of competent jurisdiction for the orderly trial of the county's claim.

*Frank M. Hunter,* Deputy Attorney General, for appellee.—The County of Philadelphia had the power or privilege of collecting its claims by a general law.  The Act of March 30, 1811, 5 Sm. L. 228, is a general law.  The auditor general and state treasurer are required, under that act, to settle every public account against the Commonwealth.

The Act of June 22, 1917, P. L. 636, is a special law.  This act authorizes, in terms, "the County of Philadelphia" to bring suit.

It does not classify counties and authorize counties of over a million inhabitants to bring suit. It excludes all other counties in the State which may have claims against the Commonwealth for the expense of conducting primary elections.

A statute which limits its operation to one county, and which cannot by any possibility apply to any other county, similarly situated, is special and local: Morrison v. Bachert, 112 Pa. 322; Com. v. Gilligan, 195 Pa. 504; Seabolt v. Northumberland Co., 187 Pa. 318.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 2, 1921:

This is a suit by the County of Philadelphia against the Commonwealth of Pennsylvania to recover approximately $500,000, expenses incurred by the former in conducting primary elections from 1911 to 1914, inclusive.

The case was tried before the court below without a jury. After more than 1,100 pages of testimony had been taken, the learned trial judge determined that the statute which authorized the suit—Act of June 22, 1917, P. L. 636,—was "offensive special legislation," and, therefore, the Court of Common Pleas of Philadelphia County had no jurisdiction to hear and determine the case; whereupon judgment was entered for defendant, "upon the question of jurisdiction and not upon the merits." Plaintiff appealed.

Prior to 1906 there was no general primary election law in Pennsylvania, such elections being purely party affairs. The Act of February 17, 1906, P. L. 36, changed this and established uniform primaries under statutory regulations. Of course, in establishing the new system, the legislature might have placed the expense on the political subdivisions of the State, but, instead of so doing, section 9 of the act provided that the commissioners in each county shall keep an account of "the entire expense of holding such primaries," and these shall be

paid "in the first instance" by the respective county treasurers, they to render an itemized statement thereof, accompanied by vouchers, to the auditor general, who, "if he finds the same correct, shall draw a warrant on the state treasurer......for the amount so approved." The Primary Election Act of July 12, 1913, P. L. 719, 733, contains, in section 12, like provisions.

It appears that plaintiff was unable to get the auditor general to adjust the accounts here in controversy; and, as a consequence, the Act of June 22, 1917, P. L. 636, "Authorizing the County of Philadelphia to bring suit against the Commonwealth of Pennsylvania, in the Court of Common Pleas of Philadelphia County," was passed. This statute the court below declared invalid as breaching two provisions of section 7, article III, of our Constitution: (a) that no law shall be passed "granting powers or privileges in any case where the granting of such powers and privileges shall have been provided for by general law, nor where the courts have jurisdiction to grant the same or give the relief asked for," and (b) that the "general assembly shall not pass any local or special law......providing or changing methods for the collection of debts."

Section 11 of article I of the Constitution provides that "suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the legislature may by law direct." When we consider this provision, together with the fact that counties are mere political subdivisions of the State, and that, after all is said, the proceedings, authorized by the act here in question represent merely a change in the manner of adjusting an account, allowed ex gratia by the Commonwealth, between it and one of its political subdivisions, it is doubtful whether either one of the constitutional limitations relied on by appellant has any application to the present case; but it is not necessary to determine this point, for, assuming, but not deciding, that the proceedings at bar must be viewed like other common law suits,

still the act under attack does not breach any constitutional limitation.

. First, taking up the constitutional provision which we have marked "(a)" above, the Act of 1917 does not grant plaintiff powers or privileges "provided for by general law" or which the courts have "jurisdiction to grant," nor did plaintiff ask or receive thereunder "relief" which the courts had power to "give." The relief asked by the County of Philadelphia was the right to an adjustment —of the account which it held against the Commonwealth—by the local court of common pleas, without a prior audit by the usual state officials,—"relief" which the courts had no general power to "grant," or "give."

Next, when we consider the constitutional provision marked "(b)" above, it is clear that the Act of 1917 is not in conflict therewith, for the statute under attack does not change the "method for the collection of debts"; it simply dispenses with the necessity for a preliminary adjustment by state officials (which is no part of a suit), and provides for an immediate application of the existing general method for collecting legal demands—by an action at law in the common pleas,—just as would have resulted ultimately under the prevailing system (Act of March 30, 1811, P. L. 145) on an appeal to the courts from such an adjustment. True, plaintiff is authorized by the Act of 1917 to bring its suit in the local common pleas instead of the Common Pleas of Dauphin County; but the court in which a case is tried is no part of the "method" of collecting the claim in suit. In fact, so far as methods are concerned, the Act of 1917 expressly provides that the suit which it authorizes "shall be subject to the same rules of pleading, practice and evidence as cases between individuals."

It is well established that, where a conflict exists between a specific constitutional provision, which is unquestionably applicable to a particular case, and certain general provisions, which, were it not for such conflict, might apply, the specific provision will prevail: Buck-

ley v. Holmes, 259 Pa. 176, 188; Com. v. Mathues, 210
Pa. 372, 398, 415; Com. v. Emmers, 221 Pa. 298, 312-13.
Here, even should it be viewed that the general pro-
visions of section 7, article III, of the Constitution, are
in conflict with section 11, article I (which expressly
acknowledges the right of the legislature to authorize
suits to be brought against the Commonwealth "in such
manner, in such courts and in such cases as [it] may by
law direct"), yet none of the provisions could be con-
strued to deny the right to bring, and hence to prose-
cute, any suit against the Commonwealth which the
legislature might authorize; but, in this connection, the
grant of authority to bring and prosecute a suit against
the Commonwealth must not be confused with the cre-
ation of a liability. It was such confusion of thought
which, we fear, caused the court below to misunder-
stand our opinion in Collins v. Commonwealth, 262 Pa.
572, and go astray in the present case.

Collins v. Commonwealth decides that (page 578),
"where there is neither liability......nor a right to sue,
the legislature cannot by a special act vest in a particu-
lar individual the right both to sue and to recover"; that
"a general act is the only remedy for this state of affairs;
but if there was a liability at the time the act author-
izing suit was passed, then that act, though special.....
would not be obnoxious to article III, section 7." We
there said that section 11 of article I of the Constitution
had to be considered in connection with a certain part
of section 7, article III, because the act under attack
in that particular case not only authorized a suit but
created a liability, which had not theretofore existed and
which was not given in common to all persons similarly
situated with the plaintiff. It is plain, when the Collins
opinion is read as a whole, that, where we say (p. 575)
"the State has not consented to waive her sovereign right
to immunity from suit, except as a result of general acts
of assembly," the word suit is used in the sense of "lia-

bility"; the very next paragraph, as well as all that follows in the opinion, clearly shows this to be so.

The legislation before us for review does not pretend to create a liability; the liability—to refund to the counties the primary election expenses—was created long prior thereto, by the Acts of 1906 and 1913. All the present statute does is to authorize the County of Philadelphia to sue the State in the local courts, thus empowering those tribunals to adjust the accounts in question, without a preliminary audit by state officials; and section 11, article I, of the Constitution, expressly acknowledges the right of the legislature to authorize suits against the Commonwealth in all instances where a previous liability exists, regarding which there is no question in this case, as hereinbefore shown.

The assignments of error are sustained and the judgment is reversed with a procedendo.

Mr. Justice FRAZER dissented.