## Moreland Estate.

Argued March 19, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William H. Eckert,* with him *Smith, Buchanan & Ingersoll,* for appellant, Berkshire Life Ins. Co.

*Thomas Lewis Jones,* with him *Karl W. Warmcastle,* for appellant, Equitable Life Assurance Society of U. S.

*Clarence A. Fry,* with him *Austin L. Staley, A. E. Kountz* and *Kountz, Fry, Staley & Meyer,* for appellant, guardian ad litem.

*D. C. Jennings,* for appellants, John Hancock Mutual Life Ins. Co. and Metropolitan Life Ins. Co.

*P. K. Motheral,* with him *William Wallace Booth* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, April 9, 1945:

We are concerned here with questions as to the application of certain provisions of the Tax Proration Act of July 2, 1937, P. L. 2762, to life insurance companies which had issued policies in favor of beneficiaries named by decedent or from which he had purchased annuities payable to such beneficiaries. An attack is also made upon the constitutionality of the act.

Thomas B. Moreland, a resident of Allegheny County, died April 13, 1942, leaving a will in which he made pecuniary bequests, inter alios, to his sister Margaret Moreland Porter,[1] his nephew T. B. Moreland Porter, and his niece Louise Porter Wampler. In the nineteenth paragraph he directed that "each and every bequest made by me in this my last will and testament shall be free and clear of any and all Federal Inheritance Tax and free and clear of any and all Pennsylvania Collateral Inheritance Tax."

The federal authorities levied upon decedent's estate a tax which, with a slight item of interest, amounted to $92,323.48. This sum was paid by his executors; its propriety is not challenged by any of the parties. In ap-

---

[1] Margaret Moreland Porter died December 25, 1942, and Louise Porter Wampler is the administratrix of her estate.

praising the value of the estate for purposes of this tax there was included certain property which did not pass under decedent's will, consisting of insurance on his life and annuities for which he had contracted. One insurance policy was in the John Hancock Mutual Life Insurance Company, the proceeds of which were payable in 15 annual instalments to certain named relatives of decedent. Another was in the Metropolitan Life Insurance Company, the proceeds of which were payable in stipulated monthly instalments to T. B. Moreland Porter. A third policy was in the Equitable Life Assurance Society, the proceeds of which were to be left with the Company on deposit and interest paid thereon to Louise Porter Wampler, with the right on her part to withdraw $2,000 of the principal per annum, and at her death the balance was to be paid to the Union National Bank of Pittsburgh as trustee under an inter vivos trust created by decedent for the benefit of Louise Porter Wampler during her life and upon her death for her children. The annuity contracts were with the Berkshire Life Insurance Company, according to two of which there were payable to Louise Porter Wampler certain annual sums, and, under another, stipulated annual amounts to Margaret Moreland Porter and at her death to Louise Porter Wampler and T. B. Moreland Porter; other annual payments were to be made to designated relatives of decedent.

The executors, having paid the tax to the federal government, filed a petition in the Orphans' Court of Allegheny County in which they stated that they had funds in their hands against which the amounts payable by T. B. Moreland Porter and by Louise Porter Wampler, individually and as administratrix of the estate of Margaret Moreland Porter, might be charged, (evidently referring to the legacies to which those parties were entitled under the will) "but the amounts payable by the other persons who have received benefits from property not coming into your petitioners' hands

must be collected from them or the companies in possession of the property from which the benefits are derived." They prayed the court to make equitable proration of the federal estate taxes which they had paid, "and to make an order directing your petitioners to charge the prorated amounts against those who have legacies payable to them and directing the other beneficiaries or those in possession of property to make payment of their prorated share of said taxes to your petitioners."

The court issued citations to all parties; the insurance companies filed, first, preliminary objections, which were overruled, and then answers to the petition. After hearing, the court entered a decree that the tax should be prorated among the insurance companies and that the amounts so prorated should be paid by them *forthwith* to the executors; the companies were authorized to deduct such payments from the benefits accruing to the beneficiaries under the policies and annuity contracts, and the beneficiaries were ordered to surrender the policies and contracts to the companies for cancellation, the companies to issue and deliver in exchange new insurance and annuity certificates which should provide for the payment of amounts properly reduced by reason of the taxes paid by the companies. The court also held that the executors could not retain from the legacies due to T. B. Moreland Porter and to Louise Porter Wampler, individually and as administratrix of the estate of Margaret Moreland Porter, any portion of the tax ultimately chargeable to them as beneficiaries under the policies and annuity contracts, this ruling being based on the provision in the nineteenth paragraph of decedent's will exempting legacies from any and all inheritance taxes.

The present appeals are by the four insurance companies and by Austin L. Staley who was appointed by the court guardian ad litem for persons in interest not sui juris and as trustee ad litem for unborn persons who might have an interest.

Were there no Proration Act or some other application of the doctrine of equitable apportionment the burden of the federal estate tax, in the absence of any direction by the testator to the contrary, would fall upon the residuary legatees and be payable out of the general funds of the estate. This works an obvious hardship upon those who are usually the closest relatives of the decedent, especially where the tax covers property passing not only under his will but under inter vivos trusts, transfers taking effect at death, or the proceeds, as in the present case, of insurance policies and annuity contracts. It was largely to relieve such situations that the Proration Act of July 2, 1937, P. L. 2762, was passed.[2] That act adds section 48.1 to the Fiduciaries Act of June 7, 1917, P. L. 447. It provides that whenever an executor or administrator has paid an estate tax assessed under the Act of May 7, 1927, P. L. 859, or any future law, or under the provisions of any estate tax law of the United States, "the amount of the tax so paid, except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues. . . . For the purposes of this section, the term 'persons interested in the estate' shall, with respect to both State and Federal taxes, include all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest, whether under a will or intestacy, or by reason of any transfer, trust, estate, in-

---

[2] Such legislation was held constitutional, and not in conflict with the federal estate tax law, in *Riggs v. Del Drago*, 317 U.S. 95, where it was said (pp. 97, 98) : "We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax."

terest, right, power, or relinquishment of power, tax-able under any of the aforementioned laws providing for the levy or assessment of estate taxes. The tax shall be paid by the executor, administrator, or other fiduciary as such out of the estate before its distribution. In all cases in which any property required to be included in the gross estate does not come into the possession of the executor, administrator or other fiduciary as such, he shall recover from whomever [sic] is in possession, or from the persons interested in the estate, the proportionate amount of such tax payable by the persons interested in the estate with which such persons are chargeable under the provisions of this section, and the orphans' court may, by order, direct the payment of such amount of tax by such persons to the executor, administrator or other fiduciary. . . . (b) The orphans' court, upon making a determination as provided in subdivision (a) of this section, shall make a decree or order directing the executor, administrator or other fiduciary to charge the prorated amounts against the persons against whom the tax has been so prorated, in so far as he is in possession of property or interests of such persons against whom such charge may be made, and summarily directing all other persons against whom the tax has been so prorated, or who are in possession of property or interests of such persons, to make payment of such prorated amounts to such executor, administrator or other fiduciary."

The question now raised is whether the court below was warranted by the terms of this statute in imposing liability upon the insurance companies for portions of the federal estate tax, prorated according to the appraised values of the policies and annuity contracts, which, under the federal estate tax law, are regarded as property of the decedent's estate passing at the time of his death. Are these companies persons "interested in the estate . . . or to whom any benefit accrues"? It

would seem clear beyond peradventure that no benefit accrued to them at the time of decedent's death or in connection with his estate, and that they are not "persons interested in the estate" as defined in the act. The "beneficiaries" and the "persons interested in the estate" are the annuitants and the persons entitled to receive the proceeds of the insurance policies, for they are the ones who acquired property or interests in the estate at the time of decedent's death. The only relation between an insurance company and the beneficiary of one of its policies is that of debtor and creditor, irrespective of whether the proceeds be payable entirely at once or in instalments. There is no fund segregated from the general assets of the company which constitutes a trust or establishes between the company and the beneficiary any relation of trustee and cestui que trust. Indeed, it is expressly provided by the Act of May 17, 1921, P. L. 682, art. IV, §413, and the Act of May 17, 1919, P. L. 208, §1, as amended by the Act of April 26, 1923, P. L. 104, §1, that whenever, under the terms of any annuity or policy of life insurance, the proceeds are retained by the company at maturity or otherwise, it shall not be required to segregate such proceeds but may hold them as part of its general corporate funds.[3] Thus it is clear that these insurance companies are not in possession of any funds or property belonging to or acquired from decedent's estate; occupying the status of debtors and not of beneficiaries they do not fall within the purview of the Proration Act. Nor does that act, as it might have done, make them withholding agents for the collection of the prorated portions of the tax; only, therefore, by legal process effecting a sequestration or attachment can the executor collect from them the amounts due from the

---

[3] The contract of the Berkshire Life Insurance Company specifically provided that the sums to be retained thereunder should not be deemed to be impressed with a separate trust, but might be held as a part of its general corporate funds and mingled therewith.

beneficiaries, and then only, of course, in such instalments, at such times, and in such manner as is stipulated in the policies; any compulsory acceleration of the payments would constitute an impairment of the obligation of the contracts. It follows that the court was without power to order a cancellation of the existing insurance and annuity certificates and the exchange therefor of new certificates containing other terms than those stipulated in the original obligations.[4]

The views we have expressed are in accord with those of Justice VINSON as set forth in *John Hancock Mutual Life Insurance Co. v. Helvering,* in the United States Court of Appeals for the District of Columbia, 128 Fed. 2d 745, where he had under consideration the meaning and scope of the term "beneficiaries" in the Federal Estate Tax Law. It is true that in New York a contrary conclusion prevails: *In re Scott's Estate,* 286 N. Y. S. 138, affirmed by the Appellate Division in 293 N. Y. S. 126 (with a forceful dissent by Justice DORE), and further affirmed in a memorandum opinion of the Court of Appeals in 274 N. Y. 538, 10 N. E. 2d 538.

The Orphans' Court was in error in holding that the executors cannot retain from the legacies payable to Louise Porter Wampler, the estate of Margaret Moreland Porter, and T. B. Moreland Porter, the prorated amounts of tax due by reason of their interests as beneficiaries or annuitants under the policies and annuity contracts. The provision in the nineteenth paragraph of decedent's will by which he exempted all the legacies

---

[4] It was provided in the annuity certificates issued by the Berkshire Life Insurance Company that all payments due thereunder should be subject to any and all tax payments required to be made by the Company, and, if any such tax payments were made, the amounts payable thereafter to the annuitants should be correspondingly reduced. In view of our holding that the Company has no such prorated tax liability there is no need for such a provision in the certificates.

from inheritance taxes applies only to the taxes which would otherwise have been allocated to such legacies, not to taxes for which the legatees might be liable because of other property which they received but which did not pass to them under the will. The portions of the tax due from them as beneficiaries of this extra-testamentary property can be collected from them by the executor, as in the case of any other debt, out of *any* assets they own, including the legacies payable to them under the will. Nor is there anything in the will which can be construed as indicating an intention on the part of decedent that the portions of the federal estate taxes due by reason of such extra-testamentary property should be paid out of the residuary estate instead of by the beneficiaries themselves.

Appellants question the constitutionality of the Proration Act in various aspects, but, in our opinion, without justification. The act does not violate Article III, section 7, by changing methods for the collection of debts. Apportionment of common obligations could always be effected upon equitable principles governing contribution: *Mellon Estate,* 347 Pa. 520, 534, 535, 536, 32 A. 2d 749, 756, 757. The Orphans' Court is a court administering equitable principles and, as such, could decree the proration contemplated by the statute; the fact that jurisdiction is conferred upon it by the act to order the persons liable therefor to pay the prorated portions of the tax does not constitute a change in the method of collecting the debt within the meaning of the constitutional prohibition: *Philadelphia v. Commonwealth,* 270 Pa. 353, 358, 113 A. 661, 662. While the Orphans' Court did not previously have such jurisdiction over persons who were merely debtors to the estate (*McGovern's Estate,* 322 Pa. 379, 186 A. 89; *Brown's Estate,* 343 Pa. 230, 235, 22 A. 2d 821, 823; *In re Estate of Norman E. Berkey,* 102 Pa. Superior Ct. 306, 156 A. 568), there is no reason, so far as the Constitution is concerned, why such jurisdiction cannot be conferred

upon it; no right of trial by jury is impaired because, as already stated, liability for contribution has always been enforceable in equity proceedings. Objection is made that the act gives the Orphans' Court the power *summarily* to direct the persons from whom the prorated portions of the tax are due to make payment to the executor or administrator, but we must assume that by the use of the term "summarily" it was not intended to dispense with the essential elements of due process of law, such elements consisting of notice and an opportunity to be heard before the tribunal having jurisdiction of the cause; appellants were accorded those rights in the court below. As far as the title is concerned, it designates the act as an addition to the Fiduciaries Act (the title of which states that it deals "generally" with "the jurisdiction, powers, and procedure of the orphans' court in all matters relating to fiduciaries concerned with the estates of decedents") "by providing for the apportionment of estate taxes in certain cases"; this is sufficiently broad to include provisions concerning the tribunal, and the ways and means, by which such apportionment is to be made: *Orlosky v. Haskell,* 304 Pa. 57, 67, 155 A. 112, 115; *Hadley's Case,* 336 Pa. 100, 106, 107, 6 A. 2d 874, 878. "Unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending Section 3 of Article III": *Gumpert's Estate,* 343 Pa. 405, 407, 408, 23 A. 2d 479, 480.

The decree of the court below is reversed and the record remanded for further proceedings consistent with this opinion.