## Brown's Estate

*Rose & Cahoon*, for accountant and widow.

*Robert G. Coglizer*, for guardian and trustee ad litem.

MURPHY, P. J., December 21, 1946.—John F. K. Brown, also known as John Frew Kellock Brown, deceased, died on November 7, 1944, testate, and his last will and testament, bearing date of May 27, 1926, was probated before the Register of Wills of Lackawanna County on December 8, 1944. John F. K. Brown, deceased, hereinafter referred to as testator, during his lifetime made certain provisions for members of his immediate family, by reason of which testator's estate was called upon to pay the Federal estate tax not only upon the items inventoried and passing under the will, the value of said testamentary property amounting to $24,768.83 less deductions of $5,159.13 and leaving a balance of $19,609.70 for tax purposes, but also on that portion of testator's estate which is designated and classified as extra-testamentary property, to wit:

*Real Estate*—Located in Borough of Dunmore, Pa.—Held by John Frew Kellock Brown and Charlotte Jeffrey Brown as tenants by the entireties.............$ 7,000.00

*U. S. Defense Bonds*—Series D and E—Various maturities. Said bonds were all registered in the names of John Frew Kellock Brown or Charlotte Jeffrey Brown and were payable to survivor under regulations of Federal Government. Tenancy by the entireties property............. 1,540.25

Liquidation value of decedent's participating certificates in Independence Fund of North America—Charlotte Jeffrey Brown was the sole beneficiary thereof.. 2,623.27

Checking Account in Third National Bank and Trust Company of Scranton (Pa.)— Payable to John Frew Kellock Brown or Charlotte Jeffrey Brown—tenancy by the entireties property ................. 651.28

*Life Insurance*—Charlotte Jeffrey Brown had certain interests in $59,169.16 of said life insurance under the option specified in the respective policies under which the same were payable and decedent's three children, namely, Mary Chalmers Larmore Brown, Charles Doughlas Kellock Brown, and Ian Alexander Brown, M.D., were the remaindermen therein, their respective interests being one half, one fourth and one fourth which is the same as their respective interests in the estate of said Charlotte Jeffrey Brown, deceased, under the provisions of her will. The remaining life insurance, namely, $3,992.71 was payable to said Charlotte Jeffrey Brown, as the sole beneficiary thereof.. 63,161.87

This extra-testamentary property passed into the hands of his heirs and members of his family without going through the hands of his personal representative. It is unquestioned that the personal representative, that is, the administrator c. t. a. of testator's estate, was called upon to pay and did pay a Federal estate tax upon not only the items passing through said testator's estate, but on items which went directly, in this instance, to his wife, Charlotte Jeffrey Brown, now deceased, and whose will was probated, and whose estate is now being audited in this term of court concurrently with testator's estate. Testator's gross estate amounts to $99,745.50. Against the said gross estate deductions totaling $11,759.13 were allowed, of which $6,600 was the amount of the bond and mortgage executed by testator and his wife, and outstanding against previously mentioned real estate. There was also allowed a Federal exemption of $60,000, so that the net estate of decedent on which the Federal tax was imposed amounted to $27,986.37. The Federal estate tax so imposed and paid out of the principal of testator's testamentary estate amounted to $2,718.09. Testator's estate is now seeking reimbursement from the estate of Charlotte Jeffrey Brown, deceased, for that portion of the estate tax on the gross estate of testator which came into the possession of Charlotte Jeffrey Brown, deceased. Said amount, as previously stated, is $2,718.09.

In other words, the first question to be answered is whether or not there should be a proration of the Federal estate tax which was paid by the administrator c. t. a. in testator's estate, or should the Federal estate tax have been paid out of testator's testamentary estate. There is also a second question which is more or less interwoven with the first. That is, whether or not the Pennsylvania transfer inheritance tax, in the amount of $53.26, assessed against the liquidated value of a certificate in the Independence Fund of North

America, wherein Charlotte Jeffrey Brown, deceased, was the sole beneficiary, should be paid by the administrator c. t. a. of testator's estate out of testator's testamentary estate.

In determining the liabilities of the respective estates and the beneficiaries under same, the purposes and intentions of testator in the sixth paragraph of his will must be ascertained. It provides:

"I will and direct that all Estate Tax, inheritance tax, succession tax, transfer tax, or any other tax in the nature of any thereof which may be chargeable upon my estate or any portion thereof, or upon any bequest, trust benefaction or any interest in my estate or any part thereof given, or provided for by my will, shall be paid out of my general estate, so that all provisions or benefactions of every kind or nature given or made by this my will shall be free of all taxes aforesaid."

Since testator mentioned both estate tax and inheritance tax in said paragraph of said will, certainly estate tax as used in the will includes, if it does not mean solely, Federal estate taxes: Prifer's Estate, 53 D. & C. 103.

In attempting to ascertain testator's intention it might be helpful to distinguish between the Federal estate tax and the Pennsylvania transfer inheritance tax. The Federal estate tax is an excise tax on testator's estate as a whole, and in calculating the Federal estate tax there must be included in the gross estate of testator not only his testamentary property, but any extra-testamentary property that he may have, such as property held by entireties, life insurance, annuity contracts, etc., and in determining the net estate there are allowed from the gross estate so determined and valued, certain deductions, e. g., expenses of administration, debts, counsel fees, etc., and against the net estate the Federal Government allows an exemption

of $60,000. The Federal estate tax is a tax on the right to give, whereas the Pennsylvania transfer inheritance tax is a tax upon the interest passing to a beneficiary, distributee, etc., by reason of the owner's death. It is, generally speaking, a tax on the right to receive.

In establishing the meaning of a will the court endeavors to put itself in the place of testator and to ascertain his meaning in the light of all the circumstances by which he was surrounded when he made it, and by which he was probably influenced. In other words, if the intention of testator was that said estate tax on the extra-testamentary portion of his estate was to be paid out of the general fund of his estate, then it is the prime duty of the court to invoke testator's intention if it be not contrary to law, even though it be wanting of common sense.

Testator was presumed to know the value of his estate when he executed his will May 27, 1926, and when he died November 7, 1944, and testator was also presumed to know the exemptions allowed by the Federal Government and whether or not his estate would be subject to a Federal estate tax. Here testator's estate, excluding extra-testamentary property, would not be subject to the Federal estate tax. In fact, his estate is less than one half of the exemption allowed by the Federal Government. Testator was also presumed to have known prior to his death, that under the Pennsylvania Apportionment Act of July 2, 1937, P. L. 2762, 20 PS §844, proration of Federal estate taxes among the persons interested in an estate, as therein defined, is mandatory, except in the case where testator otherwise directs by his will. In other words, had testator made no reference to a payment of an estate tax the extra-testamentary property would be prorated. Here, however, testator took advantage of the exception.

Since testator knew that his testamentary estate would not be subject to the Federal estate tax and yet provided for the payment of the Federal estate tax out of the general estate fund, testator could have only in mind his gross estate, which includes both the testamentary and extra-testamentary property. This being so and coupled with the directive in testator's will that all estate taxes, inheritance taxes, etc., be paid out of testator's general fund, the court can reach no conclusion other than that testator's definite purpose and intention was that the taxes on both the testamentary and extra-testamentary property in his estate be paid out of his estate and not prorated. It was a testamentary directive that said taxes be so paid and consequently considered an administration expense. Furthermore, the Act of July 2, 1937, P. L. 2762, 20 PS §844, confers jurisdiction on the orphans' court to pass upon whether or not the Federal estate tax is to be paid out of decedent's general estate or prorated without taking away vested rights in violation of constitutional limitations. That act provides, inter alia:

"Whenever it appears upon any accounting or in any appropriate action or proceeding that an executor, administrator, temporary administrator, trustee, or other person acting in a fiduciary capacity has paid an estate tax, levied or assessed . . . under any law hereafter enacted, or under the provisions of any estate tax law of the United States heretofore or hereafter enacted upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues. Such proration shall be made by the orphans' court."

Testator, by his will, bequeathed his furniture, jewelry, personal effects, belongings, etc., to Charlotte Jeffrey Brown, his wife, now deceased, and the rest of his estate, including personal, real and mixed property, to his trustees, and the net income of same to be paid to said testator's wife for and during the term of her natural life, or until her remarriage. It must be noted that testator definitely referred to the real estate although same was held by the entireties and against which there was a mortgage, so that the appraised value of the same, less the mortgage, was only $400. Again, in the fifth paragraph, section (d), testator authorized his trustee to sell said real estate. And further, in testator's trust agreement he refers to his investments and securities and authorizes his trustees to sell the same, irrespective of the manner in which said stocks and securities were held. It must also be noted that of the $63,161.87, proceeds of life insurance on testator's life, $59,169.16 of said life insurance was payable to testator's three children, and only $3,992.81 was payable to testator's wife as sole beneficiary thereof.

Certainly testator did not intend that only the income from his testamentary estate, previously mentioned, be paid to his wife during her natural lifetime, because he is presumed to have known of the low rate of return obtainable from investments, totaling $19,609.70, the net value of testator's testamentary estate, in which fiduciaries are authorized by law to invest, which would be entirely insufficient to support and maintain testator's wife. To hold that testator intended his wife to pay her respective portion of the Federal estate tax would be in derogation of testator's purposes and intentions.

For the reasons heretofore stated, we conclude that the Federal estate tax, as has been paid by the administrator c. t. a. out of the estate of John F. K. Brown, deceased, should have been so paid, and the estate of

John F. K. Brown, deceased, is not entitled to reimbursement.

In considering the second question, we must determine whether the Pennsylvania transfer inheritance tax assessed against the liquidated value of testator's participating certificate in the Independence Fund of North America, wherein Charlotte Jeffrey Brown, now deceased, is named sole beneficiary, should be paid by testator's estate or the estate of Charlotte Jeffrey Brown, deceased. This participating certificate is part of the extra-testamentary portion of testator's estate. Testator, in his will, directed that all inheritance taxes be paid out of his general fund. Testator could have been more explicit in his will and direct that the inheritance tax on said participating certificate, and mention and designate every item comprising his estate, whether it be part of the testamentary or extra-testamentary estate, be paid out of his estate. However, he spoke through his will in general terms. Even though he endeavored to crowd his intentions into entirely too few words, nevertheless, his intentions must be carried out and as previously stated, we are of the firm belief that the inheritance tax due, whether it be on testamentary or extra-testamentary property, should be borne by testator's estate, and so decree.

The orphans' court has jurisdiction under the Act of 1937, previously cited, to prorate taxes between those who take an estate created by will or under the intestate laws. Likewise, the beneficiaries under participating certificates who have paid a tax which should have been paid by the general estate can make claim, for the amount of tax so paid, against the general estate. All parties interested in the inheritance taxes so paid and now in question are at present under the jurisdiction of this court. Therefore, it is decreed that testator's estate reimburse the estate of Charlotte Jeffrey Brown, deceased, for the sum of $53.26, the amount paid by the estate of Charlotte Jeffrey Brown,

deceased, which should have, in the first instance, been paid by testator's estate.

The case at bar is distinguished from Moreland Estate, 351 Pa. 623, in that in Moreland Estate decedent directs:

"I order and direct that each and every bequest made by me in this my last will and testament shall be free and clear of any and all Federal Inheritance Tax and free and clear of any and all Pennsylvania Collateral Inheritance Tax."

There is a different set of facts in Moreland Estate than in the instant case before this court. The language in Moreland Estate clearly covers the tax exemption on the bequests and legacies which passed under the will, and only those that passed under decedent's will; whereas, in the instant case, there is a direction to pay all Federal estate taxes, and inheritance taxes out of the general estate fund. No intention can be gathered from the will in the Moreland case with respect to extra-testamentary property not devised by decedent's will, and the Supreme Court so finds:

"Nor is there anything in the will which can be construed as indicating an intention on the part of the decedent that the portions of the Federal Estate Taxes due by reason of such extra-testamentary property should be paid out of the residuary estate instead of by the beneficiaries themselves."

The questions involved in Prifer's Estate, 53 D. & C. 103, and Glatfelter's Estate, 60 York 77, are in many respects similar to the case at bar. Glatfelter's Estate held there should be proration and in so holding relied upon the Moreland case, previously cited. We are of the opinion that the intention of testator in the case at bar was far beyond the intention of decedent in the Moreland case, and that insofar as testator in the instant case directed the taxes in question to be paid from the general estate fund, the case at bar is, therefore, distinguished from the Moreland case. The issues

in the Prifer case are similar to the issues in the case at bar and were decided in the same fashion. Therefore, a discussion of the Prifer case would serve no useful purpose.