**Knight Trust**

*J. Montgomery Forster*, for accountant.

*Saul, Ewing, Remick & Saul*, for claimant.

PER CURIAM, October 4, 1949.—We are considering a petition for distribution in connection with the first

and final account of the City National Bank of Philadelphia, substituted trustee, under deed by Edward C. Knight, Jr., dated June 28, 1912. The facts are set forth as follows:

Edward C. Knight, Jr., during his lifetime, executed a deed of trust on June 28, 1912. By the terms of the trust instrument the trust terminated upon his death on July 23, 1936. Thereafter, the then trustee filed its account in this court. This court, on December 14, 1936, confirmed the account and by its decree ordered the distribution to the beneficiaries, Clara D. Doreau and Dorothy Colford de Sibert (now Armstrong). The adjudication permitted, however, the trustee to retain a fund amounting to approximately $35,000 pending settlement of United States estate tax liability. It is this fund presently in the hands of the substituted trustee which is the subject of the present accounting before the court for confirmation and distribution.

A claim against this fund is being made by H. Wilbur Bircks and the Pennsylvania Company for Banking and Trusts as ancillary executors and trustees under the will of Edward C. Knight, Jr. This claim is based on the fact that the Commissioner of Internal Revenue included the value of the rest of the trust as part of the gross estate of Edward C. Knight, Jr., and assessed an additional Federal estate tax in the amount of $26,401.71. This tax was paid by the executors under protest and the tax was sustained by the Court of Claims. The executors under the will of Edward C. Knight, Jr., have filed their final account in Rhode Island and have been discharged. An ancillary administration was set up in Philadelphia and distribution has been completed and the ancillary executors have not been discharged.

The ancillary executors and trustees under the will of Edward C. Knight, Jr., claim that the trust estate is liable for a share of the Federal estate tax. This

original claim was based on the Tax Apportionment Act of July 2, 1937, P. L. 2762, and/or under general equitable principles of contribution. This court, by an opinion filed June 17, 1948, decided that the Tax Apportionment Act of 1937, supra, applied only to the orphans' court and it was suggested that an appropriate proceeding be commenced in the Orphans' Court of Philadelphia County with the Court of Common Pleas No. 3 holding the present matter in abeyance pending final decision in the orphans' court. The Orphans' Court of Philadelphia County, in Knight Estate, 66 D. & C. 267, in an opinion by Ladner, J., filed January 21, 1949, held that apportionment under the Tax Apportionment Act of July 2, 1937, supra, was outside the jurisdiction of the orphans' court at this time for reasons set forth in the opinion which are not material here.

The court thus has for determination at this time the question of whether or not the claim of the ancillary executors and trustees under the will of Edward C. Knight, Jr., for apportionment of the Federal estate tax may be made under the general equitable principles of contribution, and also to pass on the claims for compensation and counsel fees as raised by the petition for distribution and confirmation.

In considering the petition for distribution and confirmation, and in determining whether or not the ancillary executors and trustees should be allowed their claim for apportionment of the Federal estate tax it is necessary to trace in detail the history of both the estate set up under the trust agreement of June 28, 1912, and the estate administered under the will of Edward C. Knight, Jr., dated May 1, 1936.

By indenture dated June 28, 1912, Edward C. Knight, Jr., assigned, transferred and set over to the Pennsylvania Company for Banking and Trusts all of his right, title and interest in and to the estate of

Clara Dwight Knight, deceased, to hold the same and pay over the income therefrom unto Edward C. Knight, Jr., for his life, and upon his death to pay over the income to his daughter Clara W. K. Colford for life, and upon her death to and among the children then living and the descendants of any children then dead. Settlor, Edward C. Knight, Jr., died July 23, 1936, a resident of Middletown, R. I., leaving a last will and testament dated May 1, 1936, which by decree of the Probate Court of Middletown, was duly admitted to probate on August 25, 1936. This last will and testament appointed H. Wilbur Bircks of Collingswood, N. J., and the Pennsylvania Company for Banking and Trusts as executors and trustees and they duly qualified as such.

After the death of Edward C. Knight, Jr., the Pennsylvania Company for Banking and Trusts, which at that time was serving also in the capacity of trustee under the deed of trust of June 28, 1912, filed its second and final account which was duly confirmed by decree of this court dated December 14, 1936, wherein and whereby the balance for distribution, principal and income, was awarded "subject to the payment of Federal Estate Tax if any be due" unto Clara D. Doreau and Dorothy Colford de Sibert, beneficiaries under the trust agreement. In accordance with the court's decree a schedule of distribution was approved by this court showing that a fund of $35,000 was retained by the Pennsylvania Company for Banking and Trusts pending settlement of United States estate tax liability. It is well to note that the petition for distribution and the schedule of distribution were approved by the beneficiaries of the trust estate, namely, Dorothy Colford de Sibert (now Armstrong) and Clara D. Doreau. The funds directed to be retained are presently in the hands of the City National Bank of Philadelphia as sub-

stituted trustee under the deed of trust and are the subject of the present accounting.

H. Wilbur Bircks and the Pennsylvania Company for Banking and Trusts in their capacity as executors and trustees under the will of Edward C. Knight, Jr., were ordered, over objection, by the Commissioner of Internal Revenue to include the value of the trust estate under the deed of trust as part of the gross estate of Edward C. Knight, Jr., and were assessed an additional Federal estate tax in the amount of $26,401.71, which was paid under protest. Subsequent thereto an action in the Court of Claims was brought to recover back the amount of the extra tax assessed against decedent's estate by reason of the inclusions of the principal of the trust estate under the deed of trust as part of the gross estate of Edward C. Knight, Jr. On October 1, 1946, the Court of Claims rendered a decision dismissing the claim and entered judgment against them with costs.

The executors and trustees of the estate of Edward C. Knight, Jr., having been discharged in Rhode Island upon the allowance of their final account, brought a bill in equity as trustees of the residuary trust under the will of Edward C. Knight, Jr., requesting the Supreme Court of Rhode Island to determine whether or not the additional Federal estate tax in the amount of $26,401.71 should be charged to the principal of the trust under the deed of trust dated June 28, 1912, and whether the Pennsylvania Company for Banking and Trusts as Trustee under the deed of trust should reimburse H. Wilbur Bircks and the Pennsylvania Company for Banking and Trusts as trustee of the residuary trust in that amount from funds then held by them for which an accounting has been filed. The Supreme Court of Rhode Island declined to answer the question propounded to it on the grounds that the court was without jurisdiction in

the matter and that it rests with the Pennsylvania court and not the Rhode Island court "to determine whether a Pennsylvania trustee shall pay out any of the trust funds in its hands by way of reimbursement to the Rhode Island executors, and also whether the law of Pennsylvania absolves that trustee from any duty to make such reimbursement in view of the allowance of the executors' final account in the probate court of Middletown."

In determining whether or not the res of the trust under the deed of trust dated June 28, 1912, should be responsible for a share of the Federal estate tax, the intention of Edward C. Knight, Jr., should be ascertained if possible. The last will and testament of Edward C. Knight, Jr., dated May 1, 1936, par. 7, provided as follows:

"I direct that all the foregoing gifts, devises, bequests and life interests shall, so far as possible, be paid free and clear of all succession, inheritance or estate taxes, which taxes I direct shall be paid out of the principal of my residuary estate."

This is the usual tax-free clause intended to insure that all taxes with respect to property passing under decedent's will are paid out of the residuary estate and do not reduce the specific gifts and life interests which pass by the will itself. It does not appear to have any application whatsoever to taxes which may be assessed on property included in testator's gross estate for tax purposes, but not passing under the will. See Reed's Estate, 45 D. & C. 628; Stadtfeld Estate, 359 Pa. 147; Harvey Estate, 350 Pa. 53; Hooker et al. v. Drayton et al., 69 R. I. 290, 33 A. (2d) 206.

Having determined that Edward C. Knight, Jr., by his will or otherwise, declared no express intention that the trust estate under the deed of trust of June 28, 1912, should not share its proportionate part of the Federal estate tax, we must determine whether

the ancillary executors and trustees, having paid the entire Federal estate tax, are entitled to a proportionate share under the equitable principles of contribution.

The whole of the estate, both that passing under the will and the res of the trust under the deed of trust dated June 28, 1912, was subject to the Federal estate tax. See Riggs v. Del Drago, 317 U. S. 95. The Commissioner of Internal Revenue proceeded against the executors under the will in the collection of the tax. Although the method of collection here involved inequality, neither the courts of this State nor any of the parties could compel the Commissioner of Internal Revenue to proceed against both the executors and the trustee under the deed of trust for their respective shares of the estate tax. The Tax Apportionment Act of 1937, P. L. 2762, was passed specifically to correct this inequality and the enforcement of such act is solely within the jurisdiction of the orphans' court. However, under the common pleas courts' equitable powers the same apportionment may be effected upon principles governing contribution, exoneration and marshalling of assets. In Mellon Estate, 347 Pa. 520, the court had before it the question of apportionment of Federal estate taxes. Richard Mellon, testator, died December 1, 1933. Prior to his death he had given to his wife and two children 240,000 shares of stock. The Commissioner of Internal Revenue, being of opinion that such gifts of stock were made in contemplation of death, included the value thereof in the Federal estate tax assessment. This deficiency assessment was paid partly by the executors and partly by two of the children, the wife paying nothing. Said the court, at page 530:

"As executors of the estate of Richard B. Mellon, they were responsible for the payment of the estate tax in that capacity (Act of February 26, 1926, Ch.

27, Sec. 305 (a), 44 Stat. 74, 26 U.S.C.A. Sec. 305 (a) 1926) ; and as transferees of the property upon which the deficiency assessment was based, they had individual liability (Act of 1926, supra, section 315 (b), 26 U.S.C.A. Sec. 315 (b) 1926, as amended by the Act of June 6, 1932, Ch. 209, Sec. 803 (c), 47 Stat. 280). They were also subject to individual liability under Section 3467 of the Revised Statutes, 31 U.S.C.A. 192, because, as executors, they had joined in the payment of the debts of the decedent prior to the payment of the tax deficiency. The record shows that their payments were intended to discharge the liability of the estate, as well as to save themselves from personal responsibility. They were entitled to use their own funds for both purposes. See Bentley's Est., 196 Pa. 497. In an equitable proceeding of this sort, the court is concerned with substance rather than form. We have no hesitancy in holding that insofar as they paid the estate tax over and above their respective interests in the estate, they did so as fiduciaries within the meaning of the Act of 1937."

And at pages 532, 533:

"Under the Revenue Acts, the value of this stock, which had not come into the hands of the executors of the estate of Richard B. Mellon, was taxable individually to the three transferees who received it from Richard B. Mellon. Their liability was joint and several. See Phillips-Jones Corp. v. Parmley, 302 U. S. 233. In its enforcement, the Commissioner had absolute discretion to proceed against all, or one, or several, of the transferees for the collection of the whole tax. (Cf. Treasury Regulation 70, Article 87.). With his election to proceed only against Richard K. Mellon and Sarah Mellon Scaife the courts of this State have no concern, and they could not, by any decree, compel the Commissioner to proceed otherwise. This, however, does not determine, for the purposes of

proration under the Act of 1937, the respective shares of the tax to be borne by the transferees. The method of collection may have involved inequality of payment, but the purpose of the Act of 1937 was to achieve equality of contribution.

"Consideration of the incidence of the federal estate tax and of the provisions of the Act of 1937 make it clear that the purpose of the General Assembly was to relieve distributees of inequalities which might result from the imposition of that tax. The estate tax, unlike the normal State inheritance tax, is a tax upon the property of the decedent. Unless the decedent has otherwise provided by will, payment of the tax is to be primarily the burden of the executors, and the interest of the distributees is to be diminished pro tanto by the payment of the tax prior to distribution. This was pointed out in Jeffery's Est., supra. It is entirely foreign to the purpose of the legislation to suppose that the equality which it desired to create in distributing the tax burden could be thwarted by an arbitrary act of the federal taxing officer in proceeding for collection against one or more of the several persons jointly and severally liable."

And said the court further, at pages 535, 536:

"It is clearly the intention of the Code that persons required to pay the tax should be restored by the equitable principle of contribution to the position in which they would have been had the tax been initially paid out of the estate prior to distribution. Richard King Mellon and Sarah Mellon Scaife were not volunteers in paying the tax. The joint and several liability of the three transferees had been enforced against them by the Commissioner. As stated in Bispham's Principles of Equity (10th ed., 1922), Sec. 328: 'The equity of Contribution arises when one of several parties who are liable to a common debt or obligation discharges the same for the benefit of all. . . . The application of

this equity is seen most frequently in the case of sureties; but it will, of course, be borne in mind, that the rules stated in regard to this particular class of debtors are, in general, true as to all parties who are liable in common to a debt or charge of any kind.' "

"The equitable principle of contribution has long been enforced in this Commonwealth on principles of natural justice: See Horbach's Administrators v. Elder, 18 Pa. 33; Armstrong County v. Clarion County, 66 Pa. 218; Commonwealth v. American Surety Co. of N. Y., 315 Pa. 428. An examination of those cases and the principles expressed indicates clearly the applicability of the doctrine to the circumstances of the present case. We are aware that certain lower court decisions in this Commonwealth have cast doubt upon the right of contribution for estate taxes paid by one of several persons jointly liable. We believe that the reasoning in these cases is unsound; and in Jeffery's Est., supra, although the subject was expressly left open, we refused to affirm the holding of the court below that the equitable principle of contribution would not apply to the apportionment of such taxes. In the present case we believe that the decree could be sustained either upon the terms of the statute or upon the broad principle of equity here discussed."

And see, also, Jeffery's Est., 333 Pa. 15; Moreland Est., 351 Pa. 623.

It has been argued, however, that under the decision in Parker Estate, 348 Pa. 211, there cannot be apportionment where there has been final distribution in compliance with judicial decree of the court as there is remaining nothing in the estate to prorate. However, in this case it was requested by the Pennsylvania Company for Banking and Trusts, in its capacity as trustee when it filed its second and final account, that this sum be set aside for the very purpose which claimants now ask that the fund be used. It is important

to note also that the beneficiaries under the trust joined in the prayer of the petition to have the $35,000 set aside, and the beneficiaries of the trust approved the schedule of distribution filed June 10, 1937, which set aside this sum of $35,000 if the contingency arose that the res be subject to a Federal estate tax. Therefore in this case there is a fund before the court available for apportionment.

The only remaining argument set forth by counsel for the beneficiaries under the trust as to why the claim for apportionment should not be allowed, is that this court has no jurisdiction to determine the issue under Pennsylvania law. It is contended that the question of apportionment of Federal estate taxes must be determined by the law of the domicile of the deceased. In the present case the executors and trustees did apply to the courts of Rhode Island, the State of decedent's domicile, to determine whether or not there should be apportionment of the Federal estate tax. As set forth supra, the Supreme Court of Rhode Island, in its opinion, decided the Pennsylvania court, under our law, was the proper tribunal to determine whether or not the trust fund was liable to a proportionate amount of the Federal estate tax on the basis of equitable contribution. The Rhode Island Supreme Court thus having expressly decided that this is the proper tribunal, it is difficult to understand how the beneficiaries of the trust can object, and, as stated supra, the beneficiaries of the trust, the only objectors here, acquiesced in having the funds set aside for just such a purpose, namely, the payment of any estate taxes if any be due. Further, attorneys for the beneficiaries of the trust have not drawn to our attention any decisions or statutes of Rhode Island that would prohibit our apportionment of the Federal estate tax under Rhode Island

law, nor has either side invoked or proved the law of Rhode Island.

The Uniform Judicial Notice of Foreign Law Act of May 4, 1939, P. L. 42, 28 PS §291, et seq., was passed for the purpose of the parties to an action invoking the laws of another State. See United Factors Corporation v. Mogul 142 Pa. Superior Ct. 506. Said the court, at pages 510-511:

"The court below properly took judicial notice of the laws of the state of New York. Lack of uniformity in procedure and substantive laws of the several states pertaining to the presentation and determination of the common law and statutes of sister states led to the drafting of the Uniform Judicial Notice of Foreign Law Act, enacted in Pennsylvania in 1939. This Act of 1939, May 4, P. L. 42, No. 36, 28 PS 291 et seq., is brief and the pertinent sections follow: 'Section 1. Judicial Notice.—Every court of this State shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States.'

" 'Section 2. Information of the Court.—The Court may inform itself of such laws in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information.'

" 'Section 3. Ruling Reviewable.—The determination of such laws shall be made by the court and not by the jury, and shall be reviewable.

" 'Section 4. Evidence as to Laws of Other Jurisdictions.—Any party may also present to the trial court any admissible evidence of such laws; but to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties, either in the pleadings or otherwise.'

"It appeared at the argument before us and was not denied, that at the argument on the motion for

judgment in the court below, notice had been served upon counsel for appellant that plaintiff appellee would ask the court below to take judicial notice and receive evidence of the law of the State of New York pertaining to the liability of a married woman on a contract of guaranty or suretyship."

In the present case none of the parties has advised the others that he intends to offer evidence of the law of Rhode Island, or that he intends to ask the court to take judicial notice of the law of Rhode Island, nor has the court been requested to hear evidence on the law of Rhode Island, nor to take judicial notice of such law. We thus would be justified in assuming that the law of Rhode Island was not contrary to our own law. See also General Motors Acceptance Corporation v. Foley, 311 Pa. 477; Com. ex rel. v. Nat. Surety Co. et al., 349 Pa. 599. However, attached to the petition for distribution is a copy of the opinion of the Supreme Court of Rhode Island, mentioned supra. The court in that opinion discusses the very point of law here raised without concluding whether or not under Rhode Island law the trust res would be subject to its proportionate share of the Federal estate tax. The court does refer to the case of Hooker et al. v. Drayton et al., 69 R. I. 290. We have carefully examined this case and are of the opinion that the law of Rhode Island permits apportionment under the facts of the present case. We have examined the statutes and decisions of Rhode Island independently, and find no other authority controlling in this matter.

Further, we believe that the position of the beneficiaries of the trust in objecting to the present claim for apportionment of the Federal estate tax comes too late. As set forth supra, the records of this proceeding reveal that the beneficiaries of the trust expressly joined in and approved both the petition for distribution and the schedule of distribution which sets aside

the present sum of $35,000 for payment of Federal estate taxes, if any be due. Having acquiesced in such procedure, and having taken no action in over 10 years, their objection now comes too late.

For all of the above reasons, we believe that the Pennsylvania Company for Banking and Trusts and H. Wilbur Bircks, ancillary executors and trustees, are entitled to an apportionment of the Federal estate tax. By stipulation of counsel filed in this matter it is agreed that the total net Federal estate tax liability which was paid amounted to $391,334.16. It was further agreed that should the court determine that any portion of the net Federal estate tax be borne by the principal of the trust under deed dated June 28, 1912, a fair and equitable apportionment would be as follows:

Trust under
Deed..... 121,288.21

$\overline{1,797,430.24}$ of 391,334.16      26,406.71

Testamentary 1,676,142.03

Estate .... $\overline{1,797,430.24}$ of 391,334.16      364,927.45

$\overline{391,334.16}$

Counsel for the substituted trustee is allowed the sum of $350 counsel fee.

City National Bank of Philadelphia, substituted trustee, is allowed compensation for its duties as trustee at the rate of one percent of $39,129.52.

Counsel for the substituted trustee is directed to prepare an appropriate decree in accordance with this opinion and adjudication, and to serve a copy thereof upon the contesting parties, any of whom may, if they see fit, file exceptions to the form of decree within five days, or the suggested form of decree may be acted upon by the court.