## Walsh *v.* Tate et al., Appellants.

Argued May 3, 1971. Before BELL, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Levy Anderson,* City Solicitor, with him *John M. McNally, Jr.,* First Deputy City Solicitor, for appellants.

*Harry P. Begier, Jr.,* Solicitor to the Register of Wills, for appellee.

OPINION BY MR. JUSTICE ROBERTS, October 12, 1971:

In *Lennox v. Clark,* 372 Pa. 355, 93 A. 2d 834 (1953), this Court interpreted the 1951 City-County Consolidation Amendment of the Pennsylvania Constitution[1] and held, inter alia, that the office of the Register of Wills of Philadelphia was unaffected by the amendment and hence not subject to the Philadelphia Home Rule Charter. Today we are called upon to de-

---

[1] The consolidated Amendment originally appeared as Article XIV, Section 8, of the Pennsylvania Constitution of 1874. It has since been re-adopted *in haec verba* in Article IX, Section 13, of the Constitution of 1968.

cide whether the Register of Wills is now a city office subject to the Charter by virtue of certain 1968 amendments to the Pennsylvania Constitution. We hold that it is not.

The facts giving rise to this appeal are not in dispute.

On March 18, 1959, John E. Walsh, Jr. was appointed to fill the position of Philadelphia Register of Wills. He was elected to that office in November of the same year and re-elected in 1963 and again in 1967 to successive four year terms. In July of 1970, Walsh made several personnel changes in his office. J. Vincent McGrath was demoted from First to Second Deputy; Ernest De Angelo was demoted from Second Deputy to Clerk II; John O'Grady was appointed First Deputy; Gene Lenart was named to the then vacant position of Record Custodian Supervisor; and Mary Burak was dismissed from the position of Clerk II. These demotions and dismissals were admittedly without cause.

Also in July of 1970, the Philadelphia City Solicitor issued a Formal Opinion concluding that the Register of Wills became a city office as a result of the 1968 state constitutional amendments, and in light of the Solicitor's opinion the City maintained that Walsh's personnel changes violated the Home Rule Charter which prohibits the dismissal of city employees until they have had a reasonable opportunity to take and pass a civil service qualifying examination. Accordingly, the City refused to pay the salaries of O'Grady and Lenart and continued to pay the salaries of McGrath, De Angelo and Burak.

On July 31, 1970, Walsh, O'Grady and Lenart instituted an action in equity seeking to enjoin the City[2]

---

[2] The actual individual defendants were Mayor James Tate, Romanus Buckley, Director of Finance, Tom Gola, City Controller,

from applying the Home Rule Charter to the office of the Register of Wills. The City answered and interposed a counterclaim praying for an order directing the Register to comply with the Charter. There being no issue of material fact, the case was heard and decided upon cross-motions for summary judgments. On October 30, 1970, the chancellor entered a decree nisi enjoining the City from attempting to apply the provisions of the Philadelphia Home Rule Charter to the office of Register of Wills, its personnel, functions or duties. It was further decreed that the City honor and accept the appointments, transfers and discharges made by Walsh and pay the salaries of his employees at the rates and for the time periods certified by him or his duly authorized representative. The decree was made final by stipulation on November 13, 1970, and this appeal ensued.

In understanding this controversy, it is helpful to begin by putting the issues in historical perspective. Shortly after the adoption of the City-County Consolidation Amendment of 1951, a dispute arose as to its effect upon the officers and employees of the former Philadelphia County offices of Sheriff, County Commissioner, Recorder of Deeds, Clerk of the Court of Oyer and Terminer and Quarter Sessions of the Peace, Coroner, Board of Revision of Taxes, Registration Commission, Prothonotary of the Court of Common Pleas, and Register of Wills. The legal questions involved centered upon the meaning of clauses (1), (6) and (7) of Article XIV, Section 8, of the Consolidation Amendment which provided respectively:

"(1) In Philadelphia all county offices are hereby abolished, and the city shall henceforth perform all functions of county government within its area through

_____

and Philip Poorman, City Treasurer. For ease of reference, we shall refer to these individuals collectively as the "City".

officers selected in such manner as may be provided by law. .

"(6) This amendment shall become effective immediately upon its adoption.

"(7) Upon adoption of this amendment all county officers shall become officers of the city of Philadelphia, and, until the General Assembly shall otherwise provide, shall continue to perform their duties and be elected, appointed, compensated and organized in such manner as may be provided by the provisions of this Constitution and the laws of the Commonwealth in effect at the time this amendment becomes effective, but such officers serving when this amendment becomes effective shall be permitted to complete their terms."

The matter was resolved in *Lennox,* supra, where a distinction was drawn between the Consolidation Amendment's effect on the City's control over the personnel of the former County offices and its control over their duties and functions. It was generally held that although the duties and functions of the former County offices must continue as before until changed by legislative action, the Amendment was self-executing with respect to immediately bringing the personnel of those offices within the purview of the Philadelphia Home Rule Charter. However, a different conclusion was reached with respect to the Prothonotary and the Register of Wills. Speaking for the Court in *Lennox,* Chief Justice STERN reasoned as follows:

"This brings us to consideration of the appeals involving the offices of the Prothonotary of the Courts of Common Pleas and the Register of Wills, which require individual treatment because of the fact that they are each the subject of a special provision of the Constitution, and also because they are so closely integrated in the judicial branch of the government. As to the Prothonotary, it is provided in Article V, Section 7 of the

Constitution that 'For Philadelphia there shall be one prothonotary's office, and one prothonotary for all said courts, to be appointed by the judges of said courts, . . .; the said prothonotary shall appoint such assistants as may be necessary and authorized by said courts; . . . .' While it is true that by Article XIV, section 1, of the Constitution, the prothonotary is designated as a county officer, and that clause (7) of the City-County Consolidation Amendment provides that upon its adoption all county officers should become officers of the City of Philadelphia, the question arises whether, in view of Article V, section 7, the Prothonotary should be considered a county officer *within the intendment* of the City-County Consolidation Amendment. It is an established principle of constitutional construction that, where a conflict exists between a specific constitutional provision which is applicable to a particular case and certain general provisions which, were it not for such conflict, might apply, the specific provision will prevail: Philadelphia v. Commonwealth, 270 Pa. 353, 358, 113 A. 661, 662; Commonwealth ex rel. v. Kline, 294 Pa. 562, 567, 144 A. 750, 751. Here, such a conflict does exist because, if the provision of the City-County Consolidation Amendment were to be deemed applicable to the Prothonotary, clause (7) thereof would enable the General Assembly or the City Council, as the case may be, so to emasculate his functions as practically to abolish his office altogether, and, while presumably such extreme power would not be lightly exercised, its mere existence would constitute an encroachment upon the independence and the functioning of the judiciary. Furthermore, since the Prothonotary is authorized by Article V, section 7, to appoint such assistants as may be necessary and authorized by the courts, that authority, if it were to be circumscribed by such regulations as the Civil Service Commission

might see fit to apply, could conceivably be impaired or even wholly nullified. . . . It is because of the constitutional status specially given the Prothonotary (as distinguished from the Clerk of Quarter Sessions, who is not specifically referred to in the judiciary article of the Constitution, apparently because his office was not regarded as so essential to the functioning of the judicial system as to constitute a fundamental part thereof), that we are led to conclude that the office of the Prothonotary does not fall within the scope of the City-County Consolidation Amendment, and that therefore, not being transformed into a city office, it has not become subject to the provisions of the Charter.

"The same considerations thus applicable to the office of the Prothonotary apply with equal, if not greater, force to that of the Register of Wills, since it has been held that he is a judge and that his probate of wills constitutes a judicial act: Sebik's Estate, 300 Pa. 45, 47, 150 A. 101, 102; West, Admrx. v. Young, 332 Pa. 248, 251, 2 A. 2d 745, 746; Szmahl's Estate, 335 Pa. 89, 92, 93, 6 A. 2d 267, 269. He too is the subject of specific provision in the Constitution. Article V, section 22, provides that 'In any county in which a separate orphans' court shall be established, the register of wills shall be clerk of such court and subject to its directions, in all matters pertaining to his office; he may appoint assistant clerks, but only with the consent and approval of said court.' Accordingly, it is our opinion that the office of the Register of Wills was not converted by the City-County Consolidation Amendment into a city office and therefore has not become subject to the provisions of the Charter." 372 Pa. at 370-72, 93 A. 2d at 841-42.

The constitutional basis of the *Lennox* decision has been somewhat altered. Although the material portions of the City-County Consolidation Amendment of

1951 have been readopted in identical language in the 1968 Amendment to the Local Government Article,[3] the new Judiciary Article of the 1968 Constitution no longer makes any specific reference to the office of Register of Wills. The Schedule to the new Judiciary Article, however, mentions that office in two instances. Section 16(n) of the Schedule directs that "[t]he register of wills shall serve ex officio as clerk of the orphans' court division of the court of common pleas", and Section 16(y) declares that: "The offices of prothonotary and register of wills in the City of Philadelphia shall no longer be considered constitutional offices under this article, but their powers and functions shall continue as at present until these offices are covered in the Home Rule Charter by a referendum in the manner provided by law."

The City maintains that Section 16(y) has obliterated the constitutional basis for the holding in *Lennox* exempting the Register from the Home Rule Charter and that the personnel of that office are thus now subject to the Charter. We believe that this argument has been ably disposed of in the following portions of the chancellor's opinion which we hereby adopt.

"In our opinion, the clear wording and intent of 16(y) are that the Register of Wills shall no longer be considered invulnerable, by reason of constitutional standing alone, from being taken into and made part of the unified form of City Government contemplated by the City-County Consolidation Amendment of 1951. This, in effect, repeals the specific holding of Lennox that the Register of Wills is exempt from municipal control because of its constitutional standing. However, because the Register of Wills performs a judicial function and is closely integrated into the judicial branch of government, Section 16(y) leaves it to the

---

[3] See note 1, supra.

electorate of Philadelphia to decide by referendum if and when the office of the Register of Wills shall be 'covered', i.e., the power over that office transferred to City Government under the Charter; and until such referendum takes place, the powers and functions or status of the office shall continue as existing at the adoption of the 1968 Constitution. Since Sections 13(a) and 13(f), as interpreted in Lennox, would have the effect of transferring to the City power over the 'personnel' of the office of the Register of Wills contrary to the specific constitutional mandate of Section 16(y), the general provisions of Section 13 must give way.

"We start with certain basic principles of constitutional interpretation. It is a fundamental rule that the words of a constitution, where plain, must be given their common or popular meaning, for it is in that sense the voters are assumed to have understood them when they adopted the constitution, Breslow v. Baldwin Township School District, 408 Pa. 121 (1962). Further, the presumption is that each and every clause in a written constitution has been inserted for some useful purpose and courts should avoid a construction which would render any portion of the constitution meaningless. Different sections, amendments or provisions relating to the same subject, or in pari materia, are to be construed together and read in the light of each other. 16 C.J.S. Constitutional Law, §23, pages 91-96. However, where a conflict exists between a specific constitutional provision, which is unquestionably applicable to a particular case, and certain general provisions, which, were it not for such conflict, might apply, the specific provision will prevail. Lennox v. Clark, supra; Phila. v. Commonwealth, 270 Pa. 353 (1921).

"The words of Section 16(y) are clear and direct. In words explicit, the constitutional status formerly ac-

corded the office of Register of Wills is taken away. It is directed, however, that the 'powers and functions' of the office of the Register shall continue until the voters of the City of Philadelphia elect by referendum to cover that office under the Charter.

"The definition of 'referendum' is found in Article IX (Local Government), section 14:—'Referendum' 'means approval of a question placed on the ballot by initiative or otherwise, by a majority vote of the electors voting thereon'. If Section 16(y) is followed, therefore, it is now proper to place on the ballot, by initiative or otherwise, in appropriate form, the question, 'Should the powers and functions of the office of Register of Wills be transferred to the City and covered under the Home Rule Charter.'

"If we accept defendants' interpretation of 16(y) of the Schedule to the Judiciary Article and Sections 13 (a) and 13(f) of the Local Government Article, the office of Register of Wills became a City office subject to the Charter on January 1, 1969, the effective date of the Amendment. This would mean, inter alia, that the powers of the Register to hire assistant clerks subject to the approval of the Orphans' Court without complying with civil service regulations and to hire counsel for his department rather than use the services of the City Solicitor, were thereby divested. This is contradictory to the broad meaning expressed in the phrase, 'Their powers and functions shall continue as at present', creates an ambiguity where none exists and would mean that the office of the Register, by reason of application of the Charter has something less than the power possessed at the effective date of the 1968 Amendment.

"Webster's New Collegiate Dictionary defines 'power' as, inter alia, 'The possession of sway or controlling influence over others; also, a person, government, etc.,

invested with authority or influence or exercising control; as, the men in power'. The same dictionary defines 'function' in terms of 'The acts or operations expected of a person or thing'. Thus, in terms of Section 16(y), the existing influence or control possessed by the office of the Register of Wills, as well as the operations expected of that office, are expected to continue until the office is covered in the Charter.

" 'Present' means:—'now existing, or in process; begun but not ended; not past or future', Webster's New Collegiate Dictionary. In the context of Section 16(y), 'as at present' refers to the existing powers and functions of the Register of Wills at the effective date of the 1968 Constitution, including therein, for example, the power to hire and fire employees and to perform the function and duties outlined in the Register of Wills Act of 1951, Act of June 28, P. L. 638, 1951, 20 P.S. 1840.101 et seq. In short, Section 16(y) dictates that the Register of Wills remain in status quo as an essentially judicial office pending a referendum.

"This view is supported when we consider the background against which Section 16(y) was drawn. The drafters of Section 16(y) were obviously aware of the judicial reasons expressed in Lennox for holding the City-County Consolidation Amendment of 1951 inapplicable to the office of the Register of Wills. This is evidenced in the direction in Section 16(y) that the Register of Wills shall no longer be considered a constitutional office, thereby meeting the vital, if not the sole reason, for the Lennox holding that the Register of Wills was not affected by the consolidation amendment. The drafters of Section 16(y), however, did not choose to stop after removing the constitutional status formerly accorded the Register of Wills. Had they done so, arguably, in the absence of any other provision, the office of the Register of Wills, by terms of Section (4)

and Sections 13 (a) and (f) of the Local Government Article, would be a City office and the Register, in the words of Section 13(f), would simply 'continue to perform duties and be elected, appointed, compensated and organized as may be provided by the provisions of this Constitution and the laws of the Commonwealth in effect' at the time the amendment became effective until the General Assembly otherwise provided. Alternatively, if the goal was the immediate application of Section 13 of the Local Government Article, the framers of 16(y) could have adopted comparable wording to that of Section 13(f) speaking in terms of 'duties' rather than the expression 'powers and functions'. Instead of spelling out clearly in Section 16(y) an intent to bring the office of the Register of Wills within the Local Government provisions, however, the authors of Section 16(y) did just the opposite, choosing to continue not only the duties or functions of that office but its powers. We cannot assume that this wording was not deliberate. Read against the background of the Lennox decision, the logical conclusion is the Register of Wills is 'so closely integrated in the judicial branch of government' (Lennox, p. 370) as to make desirable a referendum before declaring the Register a City office under the Charter. Until this event takes place, the Register of Wills shall serve ex officio as Clerk of the Orphans' Court Division of Common Pleas, (16(n) of the Schedule to the Judiciary Article) subject to the supervisory and administrative control of the Supreme Court.

"We note, moreover, that the wording of the Local Government Article is not as broad and encompassing as defendants would read it. Thus, Section 13(a) abolishes all County offices and the City 'shall henceforth perform all functions of county government within its area'. This, however, is not without exception for Sec-

tion 2 provides, in part: 'A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its Home Rule Charter or by the General Assembly.' Although it might be argued, therefore, that the Register of Wills is now a City office in name, nevertheless, Section 16(y), by continuing the powers and functions of the Register of Wills, operates as a constitutional barrier to the application of Section 13 to the Register of Wills.

"Defendants urge that consideration of the debate of the Constitutional Convention wherein Section 16(y) was amended by striking out 'in the manner provided by law' and 'by a referendum' inserted, leads to the conclusion that Section 16(y) has no limiting effect upon the jurisdiction of the City over the personnel of the Register of Wills established by Section 13 of the Local Government Article. Particular reference is made to the comments of Delegate Cortese:—'Mr. President, in order for, let us say by way of example, the office of the clerk of the court of Quarter Session to become part of the Home Rule Charter, it is only necessary that an ordinance to that effect be passed. But to bring in an office which is not in the charter at all, as is the case with the office of the prothonotary, a referendum as provided by law is necessary.' Journal of the Constitutional Convention of 1968, page 1131.

"From this it is suggested that the real concern of the Convention in Section 16(y) was with the manner of ultimate incorporation, or 'streamlining' of the former County offices of the Prothonotary and Register of Wills into City Government, and that Section 16(y) merely reflects the thought that the Register of Wills should ultimately be absorbed by referendum rather than act of General Assembly or City Council. Im-

plicit in this argument is the assumption that the framers of Section 16(y) intended that the Local Government provisions be immediately applicable to the personnel of the Office of the Register of Wills just as they already were with regard to the Clerk of Quarter Sessions. There are several answers to this argument. 'Such statements must be understood to be merely the personal opinion of individual members of the Convention. What the Convention adopted, and what the electors of the Commonwealth accepted, is the Constitution as it is written, and its clear meaning cannot be distorted to fit the views of those particular delegates. It must be assumed that the people who voted upon the Constitution gave to the words employed their common and ordinary significance.' Commonwealth ex rel. Margiotti v. Lawrence, 326 Pa. 526, 532 (1937).

"In light of the above authority, it is sufficient answer that we are bound to construe the wording of Section 16(y) in accordance with its plain meaning. In any event, before we read an ambiguity into the meaning of the constitutional phrase 'powers and functions shall continue as at present', we should have a more explicit indication in this constitutional debate that the Local Government Article is meant to apply to the Register of Wills before a referendum takes place. Review of the debate on this Amendment indicates that the comments of the delegates cut both ways and excerpts equally justify the opposite view.

"We are aware of the arguments in favor of a unified as versus dual form of City-County Government, Lennox, at page 365. As stated in Burke v. Clark, 87 Pa. D. & C. 329, 338 (1952), however: 'Two important values are set in opposition by the ambiguity we are considering. There is the well-known purpose to effectuate to its fullest extent the home rule powers of the City of Philadelphia. In contrast to this value there

is the entire constitutional design for the governance of the judiciary and the specific measures incorporated into the Constitution to assure the independence of the judiciary and its maximum freedom from influence by any other branch or organ of government.'

"The initial step forward removing the Register of Wills from judicial control has been taken in Section 16(y). That step has been a halting one, however, and it is left to the electorate to decide when and if the Register of Wills shall be covered in the Charter.

"It is not our duty to question the wisdom or desirability of Section 16(y). We simply hold that it means what it says and accordingly, the Register of Wills is not yet subject to the Charter." (Footnotes omitted.)

The decree of the Philadelphia Court of Common Pleas is affirmed. Each party to pay own costs.

Mr. Chief Justice BELL and Mr. Justice EAGEN concur in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.