572 A.2d 51

SCRIPTURE UNION, a Pennsylvania Non–Profit
Corporation, Appellant,

v.

John R. DEITCH, Martin A. Holmes, Catherine D. Granger
and Board of Assessment Appeals of Delaware
County, Appellees.

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1989.

Decided March 21, 1990.

Benjamin S. Ohrenstein, Haverford, for appellant.

Barry W. Van Rensler, Media, with him, A. Leo Sereni, Broomall, and William F. Holsten, II, Media, for appellees.

Before DOYLE, BARRY and PALLADINO, JJ.

BARRY, Judge.

Scripture Union appeals an order of the Court of Common Pleas of Delaware County affirming an order of the Board of Assessment and Appeals of Delaware County which had denied Scripture Union's request for an exemption from real estate taxes and assessed the property involved at $11,000 based upon a fair market value of $265,000.

In this appeal, Scripture Union does not challenge the findings relating to fair market value or assessed value; rather, it argues only that both the Board and the trial court erred in refusing to grant it the tax exemption. Our scope of review is to determine whether the trial court abused its discretion and to ascertain that all necessary factual findings are supported by substantial evidence. *Scripture Union v. Deitch*, 109 Pa.Commonwealth Ct. 272, 531 A.2d 64 (1987).

As one might gather from the preceding citation, Scripture Union has been before us on the same question involv-

ing the same property. It had appealed a prior denial of its request for an exemption. In the prior case, both the Board and the trial court had denied the requested exemption. We affirmed. *Id.*

Section 204(a)(3) of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204(a)(3) exempts from taxation property of "associations and institutions of learning, benevolence or charity ... founded, endowed, and maintained by public or private charity...." Said exemption for charitable institutions is limited to "purely public charities." Pa. Const. art. VIII, sec. 2(a)(v); *Scripture Union.* Whether one is a "purely public charity" is a mixed question of fact and law, with the party seeking the exemption bearing the heavy burden of proving its entitlement to the exemption. *Appeal of Lutheran Home at Topton,* 100 Pa.Commonwealth Ct. 244, 515 A.2d 59 (1986). Further, we must strictly construe statutory provisions exempting property from taxation. 1 Pa.C.S. § 1928(b)(5).

In *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985), the Supreme Court identified five items, all of which must be proven, before an institution can qualify as a purely public charity. An institution can qualify if it

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from the private profit motive.

*Id.,* 507 Pa. at 22, 487 A.2d at 1317. In the prior appeal before us, we held that Scripture Union had failed to prove that it donated a substantial portion of its services. As we stated, "No evidence was introduced, however, regarding the number of members who are given Scripture Union's publication free of charge. Moreover, nothing on the mem-

bership form indicates that a contribution payment may be waived by those unable to afford the cost." *Scripture Union*, 109 Pa.Cmwlth. at 277, 531 A.2d at 67.

Following the hearing in this appeal, the trial court held that Scripture Union failed to establish that it met any of the standards set forth in *Hospital Utilization Project*. For the following reasons, we agree with the court that Scripture Union failed to prove that it met three of those standards.

The trial court concluded that Scripture Union failed to prove that it donated a substantial portion of its services. The evidence in this regard is as follows. Scripture Union's basic membership fee is twenty dollars per year. As a member, one receives, inter alia, the bible study guides that Scripture Union publishes on a quarterly basis. The membership form for new members found in the bible study guides is structured with the minimum donation of twenty dollars listed first and the donations then increasing up to $1000. Next to the $1000 donation level is a dollar sign with a blank line, indicating that it can be filled in by the donor. The renewal form is structured similarly with one important difference. Following the donation levels starting with twenty dollars increasing to $1000 followed by the blank line, another portion of the form are two notations, one of which indicates that the donor cannot send a gift but would like to receive the study guide and another indicating that the donor can send only $_____ but would like to receive the study guide. The president of Scripture Union testified that it publishes 40,000 study guides each quarter of the calendar year. Of that number, 4,000 are distributed free of charge and another 1,200 distributed to members who cannot donate the minimum of twenty dollars. The president also testified that anyone indicating that it cannot make a donation or make the minimum donation will nonetheless receive the study guide.

Based upon this evidence, the trial court found that fourteen percent of the total subscriptions are donated. The court then stated:

[T]he fourteen percent (14%) is just plainly not a substantial portion of the Scripture Union's services. The majority of its services in truth are performed on a fee basis associated with memberships. Additionally, we note that the membership application or form is designed in such a fashion that it *discourages rather than encourages charitable requests* for its publications. The offer of *free literature* is buried in the fine print at the bottom of the application or subscription form. The membership donation section where a member could fill in Zero dollars ($0.00) follows after suggested donations of $20.00, $50.00, $100.00, $500.00, $1,000.00, the last or next space is a blank. This clearly implies that members can donate up to more than one thousand dollars ($1,000.00) but should not give less than twenty dollars ($20.00) it does not suggest members might give less but not nothing.

(Opinion of the trial court, pp. 5–6, 5/25/89.) (Emphasis in original.) Given that the question of whether an institution is a purely public charity is a mixed question of fact and law and given the discretion left with the trial court in these cases, we cannot determine that the findings or conclusions based thereon are subject to our reversal.

While the trial court's denial of the exemption and affirmation of the Board can be based on the above alone, we believe that two of the other standards should be mentioned. As already mentioned, the institution must prove that it is operating entirely free of the private profit motive. In 1988, Scripture Union had operating revenues of $660,-680 with operating expenses of $739,485. In 1987, those corresponding figures were $706,220 and $820,700. Scripture Union went to great lengths to show that it was operating at a deficit. It is interesting, however, that the statement including these numbers had an expense designated only as "other"; in 1988 the figure was $97,655 and in 1987 it was $103,777. When asked what expenses fell within the ambit of "other", the president could not answer the question, claiming that the problem was "the tendency of the auditors to lump things together and not give a great

deal of detail." (Notes of testimony, p. 67, 1/31/89). The trial court held that the failure to identify the expenses contained under "other" showed that Scripture Union had not met its burden of proving that it was entirely free of the private profit motive. Again, we will not disturb the court's findings and conclusions in this regard.

Scripture Union was also required to prove that it relieved the government of some of its burden. When questioned concerning Scripture Union's purpose, the president testified,

"[O]ur purpose is to—is to introduce people *to God through the Jewish Christian Scriptures* in such a way that they are made aware of the difference between right and wrong, and the importance of choosing the right, and in such a way that they are introduced to the importance of loving their neighbor and of fulfilling a responsible role in their families their workplace and in society."

(Notes of testimony, p. 7, 1/31/89.) (Emphasis added.) Suffice it to note that the First Amendment to the United States Constitution prohibits the government from endorsing any religion. While one cannot question that Scripture Union's purpose is indeed a laudable one, laudable purpose alone does not entitle one to an exemption from real estate taxation.

Finally, Scripture Union argues that the trial court abused its discretion by prejudging the case before even holding a hearing. The court here gave Scripture Union ample opportunity to prove its case; it was unable to meet its heavy burden of proving its entitlement to the exemption. The court's findings and conclusions in that regard are not the result of an abuse of discretion or bias.

Accordingly, we will affirm.

## ORDER

NOW, March 21, 1990, the order of the Court of Common Pleas of Delaware County, dated May 25, 1989, at No. 88-16557 is affirmed.