ST. ALOYSIUS R.C. CHURCH, c/o Reverend J. Edward McCullough, as Agent for Bishop Anthony G. Bosco, Trustee for the Roman Catholic Congregation at St. Aloysius, Dunbar, Fayette County, Pennsylvania, Appellant

v.

## FAYETTE COUNTY BOARD OF ASSESSMENT APPEALS.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 17, 2003.

Decided May 11, 2004.

Donald J. McCue, Connellsville, for appellant.

John S. Cupp, Jr., Uniontown, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.

In the instant case we must determine whether the upper level of a house owned by St. Aloysius Roman Catholic Church (Church), which is used primarily and regularly for residential purposes, is subject to exemption from taxation on the basis that it is an "institution of purely public charity." For the reasons set forth, we agree with the trial court that the upper level is not subject to this exemption.

As background, Fayette County (County) hired an appraiser to undertake an overall assessment of properties within the County. He appraised the parish house, and determined that both levels of the structure were subject to property taxes for the County, Dunbar Township, and the Connellsville Area School District. The Church appealed this assessment to the Fayette County Board of Assessment Appeals (Board), claiming that both levels of the parish house should be exempt from taxation. The Board denied the exemption and found the entire parish house taxable. On appeal, the trial court took its own evidence.

The record shows that the parish house consists of two levels, each comprising 2,046 square feet. The lower level serves as the Church's office and is used to conduct the routine business of the parish on a regular basis. Father J. Edward McCullough (Father McCullough), pastor of the Church, offered uncontroverted testimony regarding the uses of the upper level of the parish house. He stated that the upper level consists of three bedrooms, three bathrooms, a dining room, and a

living room area. (N.T. 9–10.) This level houses the Church's local priest and also provides housing for additional support staff, as well as assistance for individuals conducting retreats, missions, prayer services, and training programs for the parish ministries. Father McCullough further testified that the upper level periodically houses brother priests recuperating from illnesses, and also houses missionaries sporadically over an eight week period during the year. Staff lunches and meetings are also held on the upper level. Further, prior to workshops and meetings, prayer services are held on the upper level and some Bible studies are also held there on occasion. The upper level is also available to individuals of any denomination involved in domestic difficulties and, periodically, serves as a refuge for travelers from the highway. Father McCullough further testified that the Church traditionally has a priest on duty at the upper level 24 hours a day for emergency calls. He also testified that the Church is funded exclusively through offertory collections from parishioners; however, he introduced no financial statements or other evidence of the Church's finances.

 Based on this evidence, the trial court determined that the lower level of the parish house is used "primarily for public charity," and held that this portion of the realty was tax exempt. There was no appeal of this determination and that issue is *not* before the Court. The trial court also determined, without explanation, that the *upper level* of the parish house was *not* exempt from the realty tax and assessed a value of $47,295.00 as to this level. The Church appealed [1] and we are now asked to decide whether the upper level of the parish house is taxable.

 Before this Court, the Church argues that the *upper level* of the parish house is exempt from real estate taxation under the "institution of purely public charity exemption." This exemption derives from Article VIII, section 2(a)(v) of the Pennsylvania Constitution of 1968, which provides that portions of property which are "actually and regularly used" by "institutions of purely public charity" are exempt from taxation.[2] Initially, "[a]n entity seeking a [purely public charity] exemption for taxation must first establish that it is a "purely public charity" under Article VIII, Section 2[ (a)(v)] of the Pennsylvania Constitution before the question of whether that entity meets the qualifications [for an] exemption can be reached." *Community Options, Inc. v. Board of Property Assessment*, 571 Pa. 672, 676, 813 A.2d 680, 683 (2002) (emphasis added). In evaluating whether this exemption applies, we have identified five factors, each of which must be satisfied in order for an entity to qualify as a "purely public charity" for tax exemption purposes. *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 22, 487 A.2d 1306, 1317 (1985) (*HUP*).[3] The Church argues that the up-

---

1. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by substantial evidence. *Willow Valley Manor, Inc. v. Lancaster County Board of Assessment Appeals*, 810 A.2d 720, 724 (Pa.Cmwlth.2002), *petition for allowance of appeal denied*, 572 Pa. 769, 819 A.2d 549 (2003).

2. That provision provides:

(a) The General Assembly may by law exempt from taxation:
(v) *Institutions of purely public charity*, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.
*Id.* (emphasis added).

3. An entity so qualifies if it:
(a) Advances a charitable purpose;

per floor satisfies these five criteria, thereby qualifying it for the exception.

In addressing the Church's argument, we first note that religious institutions, such as the Church, are generally subject to exemption as a "place of regularly stated religious worship." Article VIII Section 2(a)(i) of the Pennsylvania Constitution of 1968 and Section 204(a)(1) of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204(a)(1)(exempting "actual places of regularly stated religious worship"). In discussing this exemption, our Supreme Court has noted that parsonages generally do not fall within it. *Second Church of Christ Scientist v. City of Philadelphia,* 398 Pa. 65, 157 A.2d 54 (1959). Church residences can fall within the exemption, but only when *primarily* used for *religious* purposes, *i.e.,* regularly scheduled weekly Sunday school classes and fellowship meetings, and when the residential use occurred merely on an occasional basis. In the instant case, the testimony clearly shows that upper level is used *primarily* and regularly for *residential* purposes, with only occasional, sporadic use for religious classes or meetings. Applying the precedent to these facts, it is clear that the upper level would qualify as a parsonage and, therefore, not meet the requirements for exemption under the "place of regularly stated religious worship exemption."

(b) Donates or renders gratuitously a **substantial** portion of its services;
(c) Benefits a **substantial** and indefinite class of persons who are legitimate subjects of charity;
(d) Relieves the government of some of its burden; and
(e) Operates entirely free from private profit motive.

*Scripture Union v. Deitch,* 132 Pa.Cmwlth. 134, 572 A.2d 51, 52 (1990) (Emphasis added.)

In this case, we emphasize that the Church does **not** argue that the upper level of the parish is exempt because it is a place of regularly stated religious worship, but, instead, asks us to apply the "institution of purely public charity" exemption. However, in evaluating the broader provision of the "public charity" exception, we cannot ignore the more specific "place of worship exception." Our Court has explained that there is a distinction between these two exemptions as follows:

> The distinction between "actual places of regularly stated religious worship" and "institutions of purely public charity" has been consistently recognized by our courts. In the case of the latter, all property actually and regularly used for the purpose of the institution is subject to the exemption, whereas the more restricted exemption status afforded to the former has not been extended beyond ingress and egress, and light and air.

*Appeal of Laymen's Weekend Retreat League of Philadelphia,* 21 Pa.Cmwlth. 175, 343 A.2d 714, 716 (1975) (relying on *Second Church of Christ Scientist of Philadelphia v. City of Philadelphia,* 398 Pa. 65, 157 A.2d 54 (1959)). We find this analysis determinative of the instant case.

Were we to allow the Church to receive a tax exemption for what is essentially its "parsonage" under the more liberal purely public charity provision, where it is not operating an entity independent from the Church itself, we would essential-

Subsequent to the *HUP* decision, the General Assembly enacted the Institutions of Purely Public Charity Act (Charity Act), and the criteria in Section 375(a) of the Charity Act, 10 P.S. § 375, emulate the *HUP* test. *Community Options, Inc. v. Board of Property Assessment, Appeals and Review,* 571 Pa. 672, 681, 813 A.2d 680, 685 (2002).

ly be giving greater effect to the more general constitutional provision allowing for a charitable tax exemption for institutions of purely public charity than to the more specific exemption for places of regularly stated religious worship. This is contrary to the established principle of constitutional construction that, where there is a conflict between a specific constitutional provision, which is applicable to a particular case, and certain general provisions which, but for such conflict, might apply, the specific provision will prevail. *Walsh v. Tate*, 444 Pa. 229, 234, 282 A.2d 284, 287 (1971). Further, this construction also would do violence to the presumption that every clause in a constitution is inserted for a useful purpose. *See id.* at 237, 282 A.2d at 288. Thus, we must avoid a construction that would render any portion of the constitution meaningless. *Id.* Allowing the Church to employ the purely public charity exemption in this case would do just that.

Additionally, we note that the situation *sub judice* stands in sharp contrast to the one before us in *Borough of Homestead v. St. Mary Magdalen Church*, 798 A.2d 823 (Pa.Cmwlth.2002), where a diocese established a *separate* job center and pursued a tax exemption for that *separate* entity on the theory it was an institution of purely public charity. In contrast, in the instant case, there is no evidence to suggest regular use of the upper level for any purpose distinct from residence or, the occasional religious use. Accordingly the purely public charity exemption cannot apply here.

Because we determine that a church functioning as a church cannot receive a tax exemption for its parsonage under the institution of purely public charity exemption, we affirm the order of the trial court.

### ORDER

NOW, May 11, 2004, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby affirmed.