IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Saraswati              :
Nirmalananda from the Decision           :
Assessment Appeals for Property          :
Located at 1400 Hampton Drive,           :
West Bradford Township, Chester          :
County, Pennsylvania                     :    No.  540 C.D. 2019
                                         :
Tax Parcel No.: 50-02-0091.0000          :    Argued:  November 12, 2019
                                         :
Appeal of:  Downingtown Area School      :
District                                 :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  February 25, 2020


        Downingtown Area School District (School District) appeals from the April 19, 2019 order of the Court of Common Pleas of Chester County (trial court). The School District contends that the trial court erred in denying its motion for a new trial on the basis of after-discovered evidence and in partially exempting from real property taxes the first floor of a building as a place of religious worship.  Because we conclude that the School District is entitled to engage in additional discovery with respect to its after-discovered claim, we vacate and remand for further proceedings.

## Background

Saraswati Nirmalananda (Landowner) is the owner of 1.1301 acres of land located at 1400 Hampton Drive, West Bradford Township, Chester County, Pennsylvania, Tax Parcel I.D. No. 50-02-0091.0000. A 2-story building containing 4,000 square feet of finished space is situated on the land (Property) and is located within the taxing area of the School District.

On July 21, 2016, Landowner filed an application for exemption of real estate taxes with the Chester County Board of Assessment Appeals (Board). Landowner asserted that the Property is entitled to an exemption from taxes pursuant to section 204(a)(1) of The General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204(a)(1),[1] as an actual place of regularly stated religious worship. In the application, Landowner described the Property as a "residential monastery" where "1/2 of the [P]roperty is used for prayer and as a meditation hall"; "3/8 of the [P]roperty is used as residential facilities for monks living in the monastery for religious practices and studies"; and the "remaining 1/8 of the [P]roperty is residential space for [Landowner], the spiritual head of Svaroopa Vidya Ashram." (Reproduced Record (R.R.) at 131a.) After the Board denied the exemption, Landowner appealed to the trial court which conducted a *de novo* trial.

---

[1] That section provides as follows:

> (a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
>
> (1) All churches, meeting-houses, or other actual places of regularly stated religious worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same[.]

72 P.S. §5020-204(a)(1).

2

Significant to our resolution of the instant appeal, prior to trial, the School District served Landowner with a Request for the Production of Documents. Among other things, the School District sought "[c]opies of any documents related to the use of the Property by Landowner." (R.R. at 138a.)

At trial, Landowner testified and admitted documentary evidence detailing the Property's layout. As described by Landowner, the second floor of the Property is approximately 2,000 square feet and is residential in nature, containing six bedrooms (three single occupancy and three double occupancy) and three bathrooms. The first floor is also approximately 2,000 square feet and, for present purposes, may be divided into five discrete areas, specifically a: (1) meditation hall, (2) meeting room, (3) kitchen and dining room, (4) reading room, and (5) entry hall and parlor. (R.R. at 16a-17a, 52a-53a, 119a-21a.)

Landowner testified that she is the spiritual leader of a group of Hindu monks known as an "ashram," which generally refers to a monastery in which the occupants of a building devote their time to "prayers and meditation" and receive instruction in religious practices and beliefs. (R.R. at 9a-12a.) The particular ashram that uses the Property is Svaroopa Vidya Ashram (Ashram), which is based in Mumbai and is part of an established Hindu order named Saraswati. (R.R. at 6a, 11a, 26a, 83a.) Landowner, also known as "the Swami," stated that the Property is used exclusively as a church and is properly characterized as a "residential monastery." (R.R. at 6a, 42a.)

Landowner also testified that the residents of the Ashram live in a communal atmosphere and gather together to worship their deity or deities on a daily basis. (R.R. at 25a.) Landowner said that the monks convene on the first floor at least three times a day, on an established schedule, and engage in meditations, hymns,

3

and prayers, commonly led by Landowner. (R.R. at 15a, 20a.) The testimony of Landowner further established that the meditation hall is a place "where the residents are gathered together for meditation," (R.R. at 20a); the "swami meeting room" is used to facilitate "spiritual development," (R.R. at 20a); and "for private spiritual counseling meetings with the residents and occasionally with some of the members of the community who live outside." (R.R. at 15a.)

Regarding the kitchen and dining rooms, Landowner explained that all meals are communal, begin with religious chanting, and that the conversations are focused on spiritual training and development and questions about Hindu texts. (R.R. at 79a-80a.) According to Landowner, all food must comply with strict religious dietary restrictions, in observance of a practice prescribed by an ancient Hindu text called "Ayurveda," and the consumption of meat, fish, and eggs is prohibited. (R.R. at 17a.) Otherwise, Landowner stated that the parlor is used for group meetings of members of the Ashram, and the reading room is devoted to reading primarily religious texts. (R.R. at 15a-16a.) Landowner explained that all of those who occupy the Property receive religious instruction, including the study of ancient religious texts. Landowner added that there are time-honored group participation practices, such as the laying of the hands, which is intended to "open[] up access to deeper and more ecstatic experiences within." (R.R. at 38a.)

Additionally, Landowner testified, in part, as follows:

Q. Have you received any approvals from [West Bradford Township] to run a church or run an ashram at that property?

A. The township is very well aware of what we are doing, and [it] treat[s] us as a group home.

4

Q.      Have you received any approvals to run a religious facility at that property?

A.      We have a letter from [the township], but I don't know if you call that approval[]. The letter approves it, yes.

(R.R. at 44a.)

By order dated September 26, 2017, the trial court found the Property exempt from property taxes to the extent of 50% of the total valuation thereof. More precisely, the trial court "determined that the first floor of this building, but only the first floor, is entitled to exemption." (Order, 9/26/17, at 1 n.1.)

On October 25, 2017, the School District filed a notice of appeal to this Court. The next day, the trial court directed the School District to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, which the School District timely filed on November 16, 2017. Thereafter, on January 10, 2018, the trial court filed its Pa.R.A.P. 1925(a) opinion.

In its Pa.R.A.P. 1925(a) opinion, the trial court stated that "[t]he sole issue raised on appeal is that [] Landowner did not meet her burden of proving that the first floor of the [P]roperty which is the subject of this tax assessment appeal is an actual place of regularly stated religious worship." (Trial court op. at 1-2.) Framing the issue in this manner, the trial court, relying predominately on the testimony of Landowner, which the trial court found to be credible, recounted, found, and determined as follows:

> [Landowner] testified that the first floor consists of a meditation hall, meeting room, kitchen and dining room, reading room and entry hall and parlor. The participants meet in the meditation hall three times a day and use it for meditations, hymns and prayers. The meeting room is used for private spiritual counseling. The parlor is used for group meetings and the reading room is used for, not surprisingly, reading. Every day, three times a day, seven

days a week, fifty-two weeks a year, the meditation hall is used for religious services. There is a specific schedule for the use of the meditation hall and it is used for no purpose other than religious practices.

From this testimony [the court] concluded that the meditation hall is clearly an actual place of regularly stated religious worship. [The court] also found that the remaining rooms of the first floor are reasonably necessary for the religious use of the property or, as with the entry hall, merely incidental thereto. [The court] therefore concluded that the first floor of this building, but only the first floor, is entitled to exemption.

(Trial court op. at 4-5.)

On October 24, 2018, prior to the date on which oral argument was scheduled in this Court, the School District filed an "Application for Relief Seeking Suspension of Oral Argument and a Remand to the Trial Court for a New Trial on the Basis of After-Discovered Evidence." (R.R. at 136a-49a.) In this submission, the School District explained that, during the course of its appeal, a neighboring resident of the Property contacted the School District and provided it with a January 30, 2011 stipulation entered into between the Landowner and West Bradford Township (Stipulation).

Notably, in this Stipulation, Landowner agreed, among other matters, not to use the Property for "religious use." (R.R. at 145a-46a.) The Stipulation also stated that Landowner agreed to remove from its website and Facebook page the following things: "all references to options for clients, employees or trainees to stay at the Property"; "all advertising to the public for religious celebrations at the Property"; "all references to the 'housing' of clients, disciples, ashramites or yogis at the Property while they attend other activities"; all references to "overnight [worship] opportunities at the Property"; and "all advertising that the Swami is teaching at the Property." (R.R. at 145a.)

6

As mentioned previously, the School District served Landowner with a Request for the Production of Documents, requesting "[c]opies of any documents related to the use of the Property by Landowner." (R.R. at 138a.) Landowner, however, did not produce the Stipulation in response to this discovery request. Ultimately, the School District asserted that the Stipulation constituted after-discovered evidence that necessitated a remand for a new trial.

By *per curiam* order entered December 6, 2018, this Court remanded to the trial court "with instructions to consider in the first instance whether, on School District's motion, the tax exemption appeal . . . should be opened on the basis of after-discovered evidence." (School District's Br. at App. F.) In so doing, we relinquished jurisdiction.

On remand, after entertaining oral argument on the School District's motion for a new trial on the basis of after-discovered evidence, the trial court entered an order dated April 19, 2019, denying the School District's motion. In doing so, the trial court analyzed the Stipulation and reasoned as follows:

> After the entry of our decision in this matter, the School District obtained a copy of an agreement dated several years prior to the application for tax exemption pursuant to which Landowner appears to have agreed not to use the [P]roperty for religious purposes. This agreement does not bear directly upon the issue of the present use of the [P]roperty. At most, it would bear on the credibility of [Landowner] who testified as to the use of the [P]roperty for religious purposes which would apparently violate the aforesaid agreement. Even if the after-discovered evidence met other prongs of the test for opening a proceeding on the basis of after-discovered evidence, it is clear that it is for impeachment purposes only and would not have compelled a different result.

(Order, 4/19/19, at 1 n.1.)

7

In a separate order, the trial court added:

> The sole requirement for tax exemption of a charity's property is that the actual, present use be in conformity with the purposes of the charitable institution. *City of Pittsburgh v. County of Allegheny*, 412 A.2d 661 (Pa. Cmwlth. 1980). *See also In re Swarthmore College*, 645 A.2d 470 (Pa. Cmwlth. 1994). The legality of the use is not at issue nor would it be relevant that the use violates an agreement which the property owner made with the municipality at some prior time.

(Order, 4/2/19, at 1 n.1.)

On May 2, 2019, the School District filed a timely notice of appeal to this Court.[2]

## Discussion

On appeal,[3] the School District argues that the trial court erred in denying it a new trial and/or decision due to after-discovered evidence. The School District emphasizes that Landowner did not produce the Stipulation in response to its discovery request and asserts that it sought a new trial not merely to impeach the

---

[2] As the School District correctly notes in its brief, given the procedural posture of this case and our remand to the trial court, the trial court's April 19, 2019 order denying the after-discovered evidence claim constituted a final appealable order. As such, all of the trial court's preceding rulings and/or orders, including the trial court's determination that the Property was partially exempt, merged into that order, and thus was subject to challenge in the instant appeal. *See K.H. v. J.R.,* 826 A.2d 863, 871 (Pa. 2003) (stating that a notice of appeal filed from the entry of a final order "will be viewed as drawing into question any prior non-final orders"); *Barrel of Monkeys, LLC v. Allegheny County*, 39 A.3d 559, 564 (Pa. Cmwlth. 2012).

[3] Our scope of review regarding the trial court's grant or denial of a new trial on the basis of after-discovered evidence is whether the court committed an abuse of discretion or an error of law which controlled the outcome of the case. *See In re Cook*, 527 A.2d 1115, 1116 (Pa. Cmwlth. 1987).

credibility of Landowner. Instead, according to the School District, it requested a new trial for the purposes of "(1) conducting additional discovery on the commercial uses of the Property revealed in the Stipulation"; and "(2) showing that [Landowner] perpetrated a fraud on the [trial] court." (School District's Br. at 23.) The School District elaborates that it believes Landowner acted fraudulently by "seeking an exemption for religious use of the Property notwithstanding the Stipulation," "not identifying or producing the Stipulation in discovery," and "perjuring herself at trial when she testified that she had a 'letter' from West Bradford Township that 'approves' the religious use of the Property, when the opposite is in fact true." (School District's Br. at 23.)

It is well settled that a petition for a new trial based on after-discovered evidence will only be granted if "that evidence: (1) is new; (2) could not have been obtained at trial in the exercise of due diligence; (3) is relevant and non-cumulative; (4) *is not for the purposes of impeachment*; (5) and must be likely to compel a different result." *In re Cook*, 527 A.2d 1115, 1116 (Pa. Cmwlth. 1987) (citations omitted; emphasis added). *See Limper v. Philadelphia Electric Co.*, 146 A. 574, 575-76 (Pa. 1929) (stating that in order for a party to succeed on an after-discovered evidence claim based on false testimony that was given at trial, the complaining party must meet all the elements of the general test that is applied to petitions for a new trial on the ground of after-discovered evidence).

Here, the School District's after-discovered evidence claim and accompanying arguments, in part, constitute an attempt by the School District to use the Stipulation to impeach the credibility of Landowner on a collateral matter. In these limited respects, the case law is clear that the School District's claim fails to satisfy the requirement that the after-discovered evidence not be used solely for the

9

purpose of impeachment. *See D'Emilio v. Board of Supervisors, Township of Bensalem*, 628 A.2d 1230, 1233 (Pa. Cmwlth. 1993) ("It is obvious that [the] [d]eveloper's rather vague allegations of wrongdoing by the [s]upervisors are merely an attempt to impeach testimony already adduced in the trial court. As such, the trial court did not err in denying [the] [d]eveloper a new trial."); *R & S Millwork, Inc. v. Department of Transportation*, 401 A.2d 587, 589 (Pa. Cmwlth. 1979) ("In its motion for new trial, condemnee alleged that condemnor's expert concealed evidence relating to his computation of costs of reproduction and depreciation. Methods of computation go to the basis of the expert's opinion and were sought solely for the purpose of impeaching credibility . . . . [P]ost-trial discovery of impeachment evidence is not a sufficient ground to secure a new trial."). Notably, it does not matter how strong the impeachment evidence is or how ruinous it may be to a witness' credibility and testimony; if the evidence seeks merely to impeach, a new trial may not be granted. *See Commonwealth v. Castro*, 93 A.3d 818, 827 n.13 (Pa. 2014) (noting that "[e]ven if [the] impeachment would 'destroy and obliterate' a witness, it is still impeachment, and the [after-discovered evidence] rule does not quantify the degree of impeachment beyond which the rule no longer applies"); *City of Wilkes-Barre v. Wilkes-Barre Fire Fighters Association Local 104*, 992 A.2d 246, 253 (Pa. Cmwlth. 2010) ("[The doctrine of after-discovered evidence does not apply even to instances of perjury[] because the purpose of such evidence is for impeachment.").

However, there is another facet to the School District's after-discovered evidence claim, one that is separate and distinct from any issue of impeachment. More specifically, the School District seeks to utilize the Stipulation as the tool by which it could obtain information that is highly relevant and material to Landowner's

tax exemption status under section 204(a)(1) of the Law. In this vein, the School District asserts that, at bare minimum, the Stipulation is sufficient evidence to permit it to engage in additional discovery.

As a basic rule, discovery should be permitted "if the matters sought are relevant to the issue of the cause. While 'fishing expeditions' are not to be countenanced under the guise of discovery, requests for discovery must be considered with liberality as the rule rather than the exception." *In Re Townsend's Estate*, 241 A.2d 534 (Pa. 1968).

Generally, if the recipient of discovery learns that its opponent has not complied with a request for production of documents, the recipient has numerous options available and may seek additional discovery from the trial court. *See* Pa.R.C.P. No. 4019(c)(5) (stating that where, among other instances, a party or person fails to make discovery with respect to a request for production, a trial court may make "such order with regard to the failure to make discovery as is just"). To obtain relief for a discovery violation, a party must demonstrate that the violation resulted in prejudice. *In re Lokuta*, 11 A.3d 427, 443 (Pa. 2011). In the context of an after-discovered evidence claim, a party seeking additional discovery may satisfy this burden by making a plausible showing that the evidence obtained through discovery would likely change the outcome of the trial. *See Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003) ("A violation of discovery does not automatically entitle appellant to a new trial. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.") (internal citations and quotation marks omitted); *cf. Reilly v. Ernst & Young, LLP*, 929 A.2d 1193, 1200 (Pa. Super. 2007) (en banc) (discussing sanctions for discovery violations under the Pennsylvania Rules

of Civil Procedure and reiterating that, first and foremost, the violation must be viewed "in light of the prejudice caused to the opposing party").

Here, it seems clear to us that Landowner did not comply with the School District's Request for the Production of Documents when it failed to produce the Stipulation. Given the record in the proceedings before the trial court, it also seems clear to us that the School District had no reason to believe that Landowner entered into a formal agreement with West Bradford Township that she would not use the Property for religious purposes and would agree not to engage in what the School District has denoted in its brief as the "commercial uses" of the Property. The issue, then, is what affect the Stipulation could potentially have on the outcome of these proceedings if the School District was provided with the opportunity to engage in further discovery.

In its brief, the School District advances the reoccurring argument that the Property is not an "actual place of regularly stated religious worship" because the "primary purpose" of the Property is not "worship." (School District's Br. at 26.) The School District asserts that, akin to a parsonage, "the Property is a mere residence for [Landowner] and a few of her fellow adherents to Hinduism, where worship is incidental." *Id.* According to the School District, Landowner's "use of the Property for prayer is no different from an individual of any other religion praying at [his] home at certain times of the day and before meals, or reading religious texts in [his] living room, or even conducting prayer sessions or religious texts studies." *Id.* at 30.

The burden of proof rests on the taxpayer seeking an exemption to prove that the property is exempt. *Four Quarters Interfaith Sanctuary of Earth Religion v. Bedford County Board of Assessment and Revision of Taxes*, 99 A.3d 603, 607 (Pa.

12

Cmwlth. 2014). Section 204(a)(1) of the Law exempts from taxation "[a]ll churches, meeting-houses, or other *actual places of regularly stated religious worship,* with the ground thereto annexed necessary for the occupancy and enjoyment of the same[.]" 72 P.S. §5020-204(a)(1) (emphasis added).

In construing the phrase, "actual places of regularly stated religious worship," *id.*, we have developed a "primary purpose" test in our decisional law and have explained that the "tax exemption is authorized . . . in those places in which the primary purpose is worship and other activities are merely incidental." *Four Quarters Interfaith Sanctuary of Earth Religion*, 99 A.3d at 607 (quoting *Mount Zion New Life Center v. Board of Assessment and Revision of Taxes and Appeals*, 503 A.2d 1065, 1071 (Pa. Cmwlth. 1986) (*Mount Zion*). Recently, this Court explained that our decision in "*Mount Zion* and the cases that followed limited the exemption to only the discrete areas of the property that were primarily used as a place of religious worship." *Archbishop of Philadelphia v. Chester County Board of Assessment Appeals* (Pa. Cmwlth., No. 1856 C.D. 2017, filed December 6, 2018) (unreported) slip op. at 8.[4]

In *Mount Zion*, a nonprofit corporation operating a Christian retreat center sought a tax exemption as an actual place of regularly stated religious worship. The center consisted of four buildings, one of which was a "manor house." In addition to the center's administrative office, the manor house contained a kitchen, dining room, living room, and four bedrooms. This Court concluded that, although small groups of retreatants used the living room for worship and religious teaching, the house also served as the home of the administrator and his family. On these facts,

_____

[4] We cite *Archbishop of Philadelphia* for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

13

we concluded that because the center "ha[d] not proven that religious worship [was] the primary use of . . . the manor house, the center was not entitled to tax exemption as to the manor house." 503 A.2d at 1071.

In *In re Order of St. Paul the First Hermit*, 873 A.2d 31 (Pa. Cmwlth. 2005), this Court reviewed separate parcels and portions of property that comprised a shrine, namely a "Retreat House" and a "Visitor Center." The "Retreat House" was located on parcel of land and contained, among other places, "meeting rooms and [] sleeping quarters for retreat programs," specifically "40 overnight rooms," the "primary purpose" of which was "to provide lodging." *Id.* at 34, 38 n.10. With respect to these areas, we concluded:

> In applying the primary purpose test to the facts in the present case, we agree with the trial court as to its classification of the different areas of the Retreat House . . . . [T]he trial court determined that the meeting room and the 40 overnight rooms were not tax exempt inasmuch as they are not places of regularly stated religious worship . . . . [E]ven though an area such as the meeting room may be used occasionally for religious classes or meetings, it is not primarily used as a place of *regularly stated religious worship.* As such, it does not qualify for an exemption.

*Id.* at 38-39 (emphasis in original).

In the "Visitor Center," there were, among other things, "religious education classrooms" and "an area allocated to the museum, gift shop, cafeteria, and Polish delicatessen." *Id.* at 34. Although we agreed with the trial court that the "religious education classrooms" were exempt, this Court also agreed with the trial court that the other areas were not exempt "inasmuch as they were not places of regularly stated religious worship." *Id.* at 39. In making the latter determination, and concerning the museum and gift shop, we rejected the appellant's argument "that the

14

religious items in the museum, gift shop and bookstore [were] sufficiently related to the primary religious use of the Shrine." *Id.* This Court said: "Although there is no dispute that these areas contain items of religious, cultural and historical significance, including those sold in the gift shop and bookstore, we do not believe that such items are essential to the primary use of the Shrine as a place of regularly stated religious worship." *Id.*

Regarding the "cafeteria and Polish delicatessen," this Court in *In re Order of St. Paul the First Hermit* affirmed the trial court's conclusion that these places were not entitled to an exemption. In doing so, we provided the following rationale:

> Similarly, the primary purpose of the cafeteria and Polish delicatessen is to provide visitors to the Shrine with a place to purchase food on weekends, even though the cafeteria may occasionally be used for religious and cultural performances. Hence, we do not believe that the food services provided in the cafeteria and delicatessen render those areas essential to the primary use of the Shrine as a place of regularly stated religious worship. Rather, they are primarily used as dining facilities. As a result, they do not qualify as places of regularly stated religious worship for purposes of Section 204(a)(1)[.]

*Id.* at 39 (footnote omitted).

Further, in *St. Aloysius Roman Catholic Church v. Fayette County Board of Assessment Appeals*, 849 A.2d 293, 296 (Pa. Cmwlth. 2004), this Court noted "that parsonages generally do not fall within" the exemption for a "place of regularly stated religious worship." *Id.* at 296. We stated that "parsonages" or "Church residences can fall within the exemption, but only when *primarily* used for *religious* purposes, *i.e.,* regularly scheduled weekly Sunday school classes and fellowship meetings, and when the residential use occurred merely on an occasional basis." *Id.* at 296

15

(emphasis in original). However, we were careful to point out that the exemption is inapplicable when the parsonage area "is used *primarily* and regularly for *residential* purposes, with only occasional, sporadic use for religious classes or meetings." *Id.*

The above cases collectively establish the proposition that the individual rooms or places within a building and/or the overall nature of the building must be primarily and regularly used as a place of religious worship in order to qualify for the exemption. Conceivably, the School District could use the Stipulation, and the terms and conditions that comprise it, as the catalyst to conduct additional discovery, whether it be by deposition or otherwise. The specific purpose of such discovery would permit the School District to inquire into the issue of whether Landowner, at the time of the application, proceedings, or at present, was or is advertising and/or using the Property in the ways that the Stipulation purportedly prohibits—*e.g.*, offering options for "clients, employees or trainees" to stay at the Property and listing advertisements to members of the general *public* to have "religious celebrations" at the Property, be provided with lodging at the Property when attending "other activities," and additional "overnight [] opportunities" to stay at the Property. If Landowner was or is engaging in these activities, and the School District is able to flesh out the details and particulars concerning the location and frequency of those activities, then this evidence could possibly have a significant impact on the manner and nature in which the Property was or is being used, overall, in the religious sense. In this regard, Landowner's failure to comply with the School District's Request for the Production of Documents cannot be deemed a form of harmless error, and the Stipulation is highly relevant to the essential elements of a religious worship exemption and the possible partition of the Property based on the nature and extent of the worship in the discrete areas of the first floor.

16

Unquestionably, the Stipulation provided the School District with a solid foundation that could serve as evidence, or lead to acquiring additional evidence, that Landowner was or is engaging in conduct that, more likely than not, could upset the total calculus and balance as to whether the first floor, or any of its discrete areas are, in fact, being used primarily to provide lodging, food, and/or a place to stay for guests as opposed to actual religious worship. If the School District could make a showing to this effect, then it would be quite possible that the outcome of the case could be different. In other words, although the first floor of the Property may be "used occasionally for religious classes or meetings," the trial court, considering the evidence obtained through additional discovery, could very well find that the first floor "is not primarily used as a place of *regularly stated religious worship*," *In re Order of St. Paul the First Hermit*, 873 A.2d at 38-39 (emphasis in original), but, instead, "is used *primarily* and regularly for *residential* purposes," *St. Aloysius Roman Catholic Church*, 849 A.2d at 296 (emphasis in original), or even lodging purposes. *See In re Order of St. Paul the First Hermit*, 873 A.2d at 38-39, n.10. In the event that the trial court would make such findings, the entire first floor of the Property, or a portion thereof, would not be entitled to an exemption.

"The purpose of the discovery rules is to prevent [] unfairness and to allow a fair trial on the merits." *Linker v. Churnetski Transportation, Inc.*, 520 A.2d 502, 503 (Pa. Super. 1987). In sum, Landowner's failure to produce critical information to the School District deprived the School District of the opportunity to explore and pursue discovery on issues that are closely related to the Property's use and status as a place of regularly stated worship. For these reasons, we conclude that the trial court erred in failing to afford the School District with the opportunity to conduct additional discovery, and that the School District sustained palpable

17

prejudice as a result. *See City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1271 (Pa. 2009) (noting that prejudice had occurred where one party's failure to produce the requested information impaired the other parties "from preparing their case for the [] arbitration hearing").

Therefore, we vacate the trial court's April 19, 2019 order and remand to the trial court to permit the School District to engage in additional discovery concerning the issues we have outlined above. Once discovery is completed, and assuming the School District is satisfied that the evidence obtained warrants a hearing, the School District may petition the trial court to conduct a hearing. The trial court shall then convene a hearing to receive such evidence and, thereafter, issue a new or supplemental opinion explaining the court's findings of fact and conclusions of law in light of that evidence.[5]

 

 

_____

PATRICIA A. McCULLOUGH, Judge

---

[5] Due to our disposition, we decline to address the School District's argument that Landowner failed to adduce sufficient evidence to establish that the first floor of the Property was exempt.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Saraswati　　:
Nirmalananda from the Decision　:
Assessment Appeals for Property　:
Located at 1400 Hampton Drive,　:
West Bradford Township, Chester　:
County, Pennsylvania　　　　:　No. 540 C.D. 2019
　　　　　　　　　　:
Tax Parcel No.: 50-02-0091.0000　:
　　　　　　　　　　:
Appeal of: Downingtown Area School　:
District　　　　　　　:

## *ORDER*

AND NOW, this 25th day of February, 2020, the April 19, 2019 order of the Court of Common Pleas of Chester County (trial court) is hereby VACATED, and the case is REMANDED to the trial court for further proceedings consistent with this opinion.

Jurisdiction RELINQUISHED.

_____
PATRICIA A. McCULLOUGH, Judge